UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN W. THOMAS,<br><br>        Petitioner,<br><br>  v.<br><br>JAMES A. YATES,<br><br>        Respondent. | 1:05-cv-01198-LJO-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS GROUND SIX IN THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. 16)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN 15 DAYS |

Petitioner is a prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

In 1982, Petitioner pleaded guilty and was convicted of one count of second degree murder, California Penal Code § 187, and one count of attempted murder, California Penal Code §§ 664 and 187. (Doc. 1, p. 3). He was sentenced to an indeterminate sentence of fifteen-years-to-life for the second degree murder conviction. (Id.). In 1990, Petitioner was found suitable for parole and a term was set. (Id., Exh. F). On April 13, 1993, however, the Board of Prison Terms ("BPT" or "parole board") scheduled a parole rescission hearing to determine whether the prior grant of parole may have been improvident. (Id., Exh. G). On August 18, 1993, the BPT rescinded Petitioner's parole date. (Id.).

In 1994, Petitioner challenged the parole board's rescission in a state petition for writ of habeas corpus, filed in the Superior Court for the County of San Luis Obispo. (Doc. 16, Exh. 1).

The Superior Court denied the petition on November 3, 1994, noting that the BPT was vested with "almost unlimited" discretion and was legally authorized to "change its collective mind." (Id.).

In May 2003, the BPT again found Petitioner suitable for parole; however, in October 2003, then-Governor Davis reversed the parole board's decision. (Doc. 1, p. 5). Petitioner then commenced a "round" of state habeas proceedings, all of which were rejected, culminating in the filing of a federal petition in the United States District Court for the Central District of California. (Doc. 1, p. 6). In that case, which is still pending, Petitioner challenged Governor Davis's 2003 reversal of the BPT's determination as well as the 1993 rescission of the parole board's 1990 parole decision. (Id.).

During the pendency of those proceedings, Petitioner once again appeared before the BPT on June 30, 2004, and the parole board again found Petitioner suitable for parole. (Doc. 1, p. 12). However, again, the governor, now Governor Schwarzenegger, reversed the BPT's decision in December 2004. (Id.).

Petitioner then commenced a "round" of state habeas proceedings regarding the 2004 reversal. On March 11, 2005, Petitioner filed the first state court petition regarding the instant case, contending that Governor Schwarzenegger's reversal was not supported by "some evidence," and that the 1993 rescission was unlawful. (Doc. 16, Exh. 3). On May 10, 2005, the Superior Court denied the petition, finding that "some evidence" supported the Governor's decision. (Id.). The court also rejected Petitioner's claim regarding the 1993 rescission on the grounds that it was not timely filed, citing In re Clark, 5 Cal.4th 750, 785, 786 (1993). (Id. at p. 4).

Petitioner then filed a habeas petition in the California Court of Appeal, Second Appellate District, raising the same issues. (Doc. 16, Exh. 5). The appellate court denied the petition on June 7, 2005. (Id., Exh. 6). Petitioner then filed a petition for review in the California Supreme Court that was denied on August 31, 2005. (Id., Exh. 6).

On September 19, 2005, the instant petition was filed. (Doc. 1). On August 1, 2006, the Court ordered Respondent to file an answer or, in lieu of an answer, a motion to dismiss. (Doc. 11).
///

On November 13, 2006, Respondent filed the instant motion to dismiss Ground Six. (Doc. 16). On November 13, 2006, Petitioner filed his opposition to the motion to dismiss. (Doc. 17).

**DISCUSSION**

Respondent contends, inter alia, that Ground Six, the claim related to the 1993 "rescission," is barred by the AEDPA's one-year statute of limitations.[1] The Court agrees.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after the statute's enactment). The instant petition was filed on September 19, 2005; thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

///

---

[1] Respondent's motion to dismiss does not challenge the remaining claims in the petition concerning Governor Schwarzenegger's 2004 reversal of the BPT's parole eligibility determination.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, Petitioner asserts that the BPT's rescission determination, which occurred on August 18, 1993, was unlawful, and he seeks federal habeas review by this Court. For actions occurring prior to the enactment of the AEDPA, the statute of limitations began to run on April 25, 1996. Thus, Petitioner had until April 24, 1997 to file a federal habeas challenge to the 1993 rescission. Malcom v. Payne, 281 F.3d 951, 955 (9th Cir. 2002); Patterson v. Stewart, 251 F.3d 1243 (9th Cir. 2001). The instant petition was filed on September 19, 2005, almost *eight and one-half years after* the one-year AEDPA period had expired. Thus, unless Petitioner has been "saved" by either statutory or equitable tolling under the AEDPA, Ground Six is untimely and should be dismissed.

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). See Carey v. Saffold, 536 U.S. 214 (2002)(The Court held that a petitioner is normally entitled to one "full round" of collateral review in state court without federal interference. While the "full round" is properly in progress, the AEDPA's one-year statute is tolled.); Welch v. Carey, 350 F.3d 1079, 1083-1084 (9th Cir. 2003).

As discussed above, it appears that Petitioner commenced a "round" of state habeas proceedings related to the instant claim on March 11, 2005 in the Superior Court for the County of Los Angeles, that concluded when the California Supreme Court denied his Petition for Review on August 31, 2005. Thus, he would be entitled to statutory tolling for a period of 173 days, leaving 192 days remaining in his one-year AEDPA "window." However, Petitioner still has approximately eight years that remain un-tolled. Unless Petitioner can establish his entitlement to statutory or equitable tolling for that entire period, exclusive of the 192 days that remain, the claim is untimely under the AEDPA.

4

In response, Petitioner contends that the one-year period did not commence, and that the legal basis for his claim regarding the 1993 rescission did not accrue, until the United States Court of Appeals for the Ninth Circuit decided McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), on September 25, 2002. In that case, the Ninth Circuit expressly held that California's parole statute created a general due process liberty interest in a release date and that the setting of a date for an inmate created a specific liberty interest. Id. at 902-903.

Petitioner, however, is not entitled to tolling under McQuillion. First, under the AEDPA, the one-year limitations period commences to run, inter alia, from the later of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(C) and (D).

Here, understandably, Petitioner has not claimed that the "*factual* predicate" for his claim was not known to him at the time of the 1993 rescission. Thus, he can only assert that McQuillion falls within subsection (C). Clearly, it does not. The Ninth Circuit stated that, although it was for the first time expressly holding that a California inmate had a liberty interest once his parole date had been set, the Court had for many years "assumed," without expressly holding, that such was the case, relying on prior United States Supreme Court decisions:

> "The governing rule in this area was articulated by the Supreme Court in Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). Greenholtz and Allen established that, while '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence [,]' Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100, a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest. Id. at 12, 99 S.Ct. 2100; Allen, 482 U.S. at 377-78, 107 S.Ct. 2415."

McQuillion, 306 F.3d at 901.

The Ninth Circuit continued:

> Although we have never directly held that California's parole scheme creates a protected liberty interest, *we have repeatedly assumed that it does*. See Powell v.

5

1  Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th
2  Cir. 1992).  Today we hold what we have previously assumed.  *Under the 'clearly established' framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest in release on parole.*"
3

4 McQuillion, 306 F.3d at 902 (emphasis supplied).

5  Thus, McQuillion merely made explicit a rule already made implicit for California inmates and already "clearly established" by the United States Supreme Court in decisions as far back as 1979 and 1987, well before Petitioner's 1993 rescission accrued.  Hence, Petitioner cannot credibly maintain that the *legal* basis for his claim arose only with the Ninth Circuit's announcement of McQuillion in September 2002.

10  However, even assuming, arguendo, as Petitioner appears to maintain, that McQuillion established a new constitutional right, that right, as articulated by McQuillion and as it pertains specifically to state inmates under California's parole statute, has itself not been formally acknowledged by the United States Supreme Court *nor has it been made retroactive in collateral proceedings*.  Accordingly, even if Petitioner is correct that McQuillion announced a "new" rule, he cannot avail himself of it in this collateral proceeding.  Were this not the case, the AEDPA's one-year limitation period would be rendered meaningless because each time the Ninth Circuit issued a decision related to some constitutional right for criminal defendants, those inmates could then file federal habeas petitions claiming a "new" legal basis had arisen, regardless of when the inmates had been convicted or how long ago the one-year period had expired as to their claims.  The result would be a never-ending stream of federal habeas petitions unfettered by the AEDPA.  Obviously, this cannot be what the Congress intended by § 2244(d)(1)(C).

22  Moreover, even if all of the foregoing were not true, Petitioner still has not established entitlement to statutory or equitable tolling for the time between the announcement of McQuillion and the filing of the instant petition such that the challenged claim would be timely under the AEDPA.  As mentioned, McQuillion was decided on September 25, 2002.  Thus, assuming that case provided the legal basis for Petitioner's claim regarding the 1993 rescission, the one-year limitation period would have commenced the following day and would have expired on September 25, 2003.

28

6

Petitioner did not file the first state habeas petition in the instant case until March 11, 2005, eighteen months *after* the limitations period would have expired. Thus, even accepting as true Petitioner's contention regarding the legal effect of McQuillion on the one-year statute of limitations, Ground Six is still untimely under the AEDPA.[2]

The limitations period is also subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997)(noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998)(en banc), overruled in part on other grounds by Woodford v. Garceau, 538 U.S. 202, 205-206 (2003). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)).  In order to win equitable tolling, a prisoner must demonstrate that "extraordinary circumstances beyond [his] control" made it "impossible to file a petition on time." (Beeler), 128 F.3d at 1288.  In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." More recently, the Ninth Circuit reaffirmed this rule in Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005). In that case, the Court

---

[2] The fact that Petitioner raised the identical issue in his first "round" of state habeas proceedings stemming from the 2003 reversal by Governor Davis does not save Ground Six.  Petitioner alleges that Governor Davis reversed the BPT's grant of parole on October 10, 2003.  (Doc. 1, p. 5).  Although the record does not indicate the precise date on which Petitioner commenced that earlier "round" of state habeas proceedings arising from Governor Davis's decision, it would necessarily have been *after* the October 10, 2003 decision. As mentioned, assuming Petitioner is correct that his one-year period ran from the announcement of McQuillion, it would have expired on September 25, 2003, which is *before* Petitioner commenced the prior "round" of state habeas petitions upon which statutory tolling could be predicated.  Thus, even assuming he was entitled to statutory tolling during the pendency of the prior "round" of petitions, Ground Six is still untimely because the one-year period had expired even before Petitioner commenced that prior "round" of petitions. Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000)(petitioner is not entitled to tolling where the limitations period has already run prior to filing state habeas proceedings).

7

pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." Id.

Here, Petitioner has made no claim of equitable tolling regarding Ground Six, and the Court's review of the record now before it does not disclose any basis for such a claim. Accordingly, the Court finds that Petitioner is not entitled to equitable tolling under the AEDPA.

In summary, Ground Six, the claim related to the 1993 rescission, is untimely under 28 U.S.C. § 2244(d)(1) and should be dismissed.[3]

## **RECOMMENDATIONS**

For the foregoing reasons, the Court RECOMMENDS as follows:

1. Respondent's motion to dismiss (Doc. 16), should be granted;

2. Ground Six in the petition for writ of habeas corpus (Doc. 1), should be dismissed; and

3. Upon adoption of the Magistrate Judge's Findings and Recommendations, the matter should be remanded back to the Magistrate Judge for further proceedings on the remaining grounds for relief.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within fifteen days after filing of the Objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

---

[3] Because the claim is clearly untimely under the AEDPA and should be dismissed, the Court does not reach Respondent's additional grounds for dismissal of Ground Six, i.e., lack of exhaustion, successive petitions, and procedural default.

1 | The parties are advised that failure to file objections within the specified time may waive the
2 | right to appeal the Order of the District Judge.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 16, 2007**                                       **/s/ Theresa A. Goldner**
                                                                                 UNITED STATES MAGISTRATE JUDGE