1

2

3

4

5

6

7

8
# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA
9

10    BRIAN THOMAS,                                 )    1:05-cv-01198-LJO-JMD-HC
                                                    )
11                        Petitioner,               )    ORDER DENYING RESPONDENT'S
                                                    )    REQUEST FOR DISMISSAL
12          v.                                      )
                                                    )    ORDER DENYING RESPONDENT'S
13    JAMES A. YATES,                               )    MOTION FOR RECONSIDERATION
                                                    )
14                        Respondent.               )    ORDER DIRECTING MAGISTRATE JUDGE
                                                    )    TO RESCHEDULE EVIDENTIARY
15    _____              )    HEARING

16
## I.      Introduction
17
        Petitioner is a former inmate proceeding with a petition for writ of habeas corpus pursuant to
18
28 U.S.C. § 2254.[1]  Petitioner filed the instant petition on September 19, 2005, while in the custody
19
of the California Department of Corrections and Rehabilitation ("CDCR").  The petition does not
20
challenge Petitioner's conviction or sentence; rather, the petition asserts that the state's denial of
21
parole to Petitioner in 2004 violated Petitioner's rights under the Due Process Clause of the
22
Fourteenth Amendment and Ex Post Facto Clause of the United States Constitution.
23
///
24

25    _____

26    [1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997)
27    (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.
28

1    On March 19, 2009, the Magistrate Judge entered an order scheduling an evidentiary hearing

2    in order to permit Petitioner to present evidence relevant to his ex post facto claim. (Doc. 27).

3    Respondent filed a motion for reconsideration of the order setting the evidentiary hearing on April 2,

4    2009.  (Doc. 28).  On April 10, 2009, Petitioner filed an opposition to Respondent's motion for

5    reconsideration.  (Doc. 29).  Petitioner's opposition revealed that Petitioner was released on parole

6    on April 9, 2009.  Accordingly, the Court issued an order vacating the hearing date for Respondent's

7    motion to reconsider and ordered the parties to brief the issue of whether or not the petition should

8    be dismissed as moot ("OSC"). (Doc. 30).  Petitioner filed a reply to the OSC on May 17, 2009.

9    Respondent filed a reply on May 18, 2009.

10   **II.      Mootness**

11        **A. Petitioner's Alleged Injury May Be Redressed by the Court**

12        A case becomes moot when it no longer satisfies the case-or-controversy requirement of

13   Article III, section 2, of the Constitution.  E.g., Spencer v. Kemna, 523 U.S. 1, 7 (1998). The

14   case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the

15   parties continue to have a personal stake in the outcome of the lawsuit.  Id.  A habeas petition is

16   moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court

17   issuing a writ of habeas corpus.  Burnett v. Lampert, 432 F.3d 996, 1000-01 (9th Cir. 2005) (quoting

18   Spencer, 523 U.S. at 7).  The burden of demonstrating mootness is a heavy one.  Cantrell v. City of

19   Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) (citations omitted).

20        Under California law, "an inmate-turned-parolee remains in the legal custody of the [CDCR]

21   through the remainder of his term, and must comply with all of the terms and conditions of parole,

22   including mandatory drug tests, restrictions on association with felons or gang members, and

23   mandatory meetings with parole officers."  Samson v. California, 547 U.S. 843, 851 (2006).   The

24   restrictions imposed on a parolee constitute a concrete injury for the purposes of mootness analysis.

25   See, e.g., Spencer, 523 U.S. at 7-8 (restrictions imposed by the terms of the parole constitute a

26   concrete injury); Jones v. Cunningham, 371 U.S. 236, 243 (1963) (same).  Accordingly, Petitioner's

27   cause is not moot if the Court can fashion a remedy to redress Petitioner's injury.

28   ///

The OSC was based in part on the Court's construction of California Penal Code section 3000.1, which provides that the parole period for prisoners sentenced to indeterminate life sentences is the remainder of the parolee's life.  Petitioner points out, correctly, that section 3000.1 does not apply to Petitioner, as Petitioner's commitment offense occurred before the effective date of section 3000.1.  See In re Chaudhary, 172 Cal.App.4th 32, 34 (Cal. Ct. App. 2009) (stating that section 3000.1 applies to crimes committed after January 1, 1983).  At the time Petitioner committed his crime, the maximum period of parole for a person convicted of second degree murder was five years.  See In re Carabes, 144 Cal.App.3d 927, 930 (Cal. Ct. App. 1983) (stating that prior to enactment of California Penal Code section 3000.1, section 3000 established maximum parole period for second degree murder of five years).

The Court finds that the petition is not moot, as Petitioner's parole term is determinate and not subject to the lifetime parole requirement set forth in California Penal Code section 3000.1. Compare Chaudhary, 172 Cal.App.4th at 38 (no credit for time spent unlawfully incarcerated with respect to parole term governed by California Penal Code section 3000.1(a)) with Carlin v. Wong, 2008 U.S. Dist. LEXIS 63116 *5 (N.D. Cal. 2008) (surplus time that petitioner was incarcerated beyond his parole date should be credited toward his determinate parole period).  The Court may afford Petitioner a remedy, despite his release from prison, by issuing an order directing the CDCR to credit time served in prison in violation of Petitioner's constitutional rights towards Petitioner's determinate period of parole supervision.  See McQuillion v. Duncan, 342 F.3d 1012, 1015 (9th Cir. 2003) (noting that appropriate habeas remedy was immediate release without parole supervision where petitioner's parole supervision period would have lapsed but for constitutional violation); see also Thompson v. Carey, 2009 U.S. Dist. LEXIS 13482 * 83 (E.D. Cal. 2009) ("[i]f the Governor had not reversed the Board's suitability finding in November 2003, petitioner's five year parole term...would now be complete...[t]herefore, petitioner should be discharged from parole).

**B.  Respondent's Contentions**

Respondent contends that the petition is moot because 1) Petitioner has been granted parole and has thus received the remedy sought in the petition; 2) Petitioner has received the process due to him; 3) the Court may not order reduction of Petitioner's parole term because the length of his parole

1   term is solely an issue of state law;  and 4) reducing or eliminating Petitioner's period of parole

2   supervision would thwart the legislative purpose behind California's parole scheme.

3                    **1) Petitioner Has Not Received All the Relief Requested**

4        Some courts have held that release on parole moots a habeas petition concerning denial of

5   parole on the theory that once released, the petitioner has obtained the relief sought in the petition.

6   E.g., Ellis v. Campbell, 2007 U.S. Dist. LEXIS 48980 at *8 (E.D. Cal. 2007).  Here, however,

7   Petitioner's initial request for relief asks the Court to order the CDCR to "credit [Petitioner's] parole

8   term with the time during which he has been confined in prison in excess of his term calculated by

9   the [parole board] at his June 30, 2004 parole hearing, and to discharge his parole if its term is

10  exceeded thereby." (Pet. at 41).  Accordingly, Petitioner has not received all of the relief requested in

11  his petition.

12                      **2) Respondent's Due Process Argument**

13       Respondent's argument that the petition is moot because Petitioner has now received all the

14  process due to him is incorrect.  Although Petitioner asserts a due process claim, the petition also

15  raises an ex post facto challenge, which does not hinge on the process Petitioner has been afforded.

16  With respect to Petitioner's ex post facto claim, the question is whether an ex post facto violation

17  occurred in 2004; if so, Petitioner is entitled to relief regardless of the process afforded to him in

18  2009.

19                              **3) State Law Argument**

20       Respondent contends that the Court may not shorten the duration of Petitioner's parole

21  supervision because the length of a prisoner's parole term is solely an issue of state law.  Respondent

22  cites no authority for this proposition.  Although California law determines the terms of a prisoner's

23  parole, it is the duty of a federal habeas court to determine whether such parole custody violates the

24  prisoner's constitutional rights; if so, the Court may grant relief.  See Carey, 2009 U.S. Dist. LEXIS

25  13482 * 83.  Respondent's argument that "the Supreme Court has not addressed whether a state

26  inmate is entitled to have time taken off his parole period" is irrelevant. (Response to Order to Show

27  Cause at 4).  Nothing in section 2254 requires that the *remedy* for a constitutional violation be

28  "clearly established."  Federal habeas courts are "free to fashion the remedy as law and justice

1  require," and can do more than simply ordering a petitioner's release from physical custody.  Sanders

2  v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994).  Respondent's contention that "there is no precedent

3  allowing federal courts to require a life inmate's release on parole," (Response to Order to Show

4  Cause at 4), is incorrect, see McQuillion, 342 F.3d at 1015 (affirming habeas grant to prisoner

5  serving indeterminate life sentence).

6  **4) Legislative Purpose of California's Parole Scheme**

7  Respondent cites Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) in support of its contention

8  that the legislative purpose of California's parole scheme precludes the Court from granting

9  Petitioner relief. (Response to Order to Show Cause at 4).  Estelle is of no help to Respondent, as

10  that case states simply that a federal habeas court is bound by the state's interpretation of its own

11  laws.  Respondent points to no authority–state or federal– that stands for the proposition that a

12  federal habeas court may not shorten the duration of a parolee's period of parole supervision in order

13  to vindicate the parolee's constitutional rights.  The Court may not ignore alleged violations of

14  Petitioner's constitutional rights simply because parole supervision is helpful to many parolees.  See

15  Jones, 371 U.S. at 243. "It is not relevant that [parole] conditions and restrictions...may be desirable

16  and important parts of the rehabilitative process; what matters is that they significantly restrain

17  petitioner's liberty to do those things which in this country free men are entitled to do." Id. at 242-43.

18  **III.   Motion for Reconsideration**[2]

19  **A. Petitioner's Ex Post Facto Claim**

20  Petitioner contends that article V, section 8(b) of the California Constitution, pursuant to

21  which the Governor has reversed two parole board decisions granting Petitioner parole, violates the

22  Ex Post Facto Clause of the United States Constitution.  The Los Angeles Superior Court held that

23  Petitioner's ex post facto claim was foreclosed as a matter of law in the only reasoned decision

24  provided by the state.[3]

25

26  [2] The Court finds that a hearing on Respondent's motion for reconsideration is unnecessary. E.D. Cal. R. 78-230(h).

27  [3] The California Court of Appeal and California Supreme Court summarily denied Petitioner's state habeas petitions.   In
28  reviewing a state court's summary denial of a  habeas petition, the Court must "look through" the summary disposition to the
last reasoned decision issued by the state.  Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).

1   The Superior Court did not conduct an evidentiary hearing or make any factual findings regarding

2   Petitioner's ex post facto claim.

3        The Ex Post Facto Clause prohibits the states from enacting retroactive laws that increase the

4   punishment for a crime after its commission.  U.S. Const., Art. I § 10; e.g., Garner v. Jones, 529 U.S.

5   244, 249-50 (2000) (citing Collins v. Youngblood, 497 U.S. 37, 42 (1990)).  Even facially neutral

6   laws that are procedural in nature may violate the Ex Post Facto Clause.  See, e.g., id. ("not every

7   retroactive procedural change creating a risk of affecting an inmates terms or conditions of

8   confinement is prohibited"); see also Collins, 497 U.S. at 46 ("labeling a law 'procedural'...does not

9   thereby immunize it from scrutiny under the Ex Post Facto Clause").  The constitutional prohibition

10  on ex post facto laws applies only to penal statutes which disadvantage the offender affected by

11  them.  Collins, 497 U.S. at 41 (citing Calder v. Bull, 3 U.S. 386, 390-392 (1798) (opinion of Chase,

12  J.)). The Ex Post Facto Clause's prohibition on retroactive laws that increase the punishment for a

13  crime is clearly established federal law for the purposes of 28 U.S.C. § 2254.  See, e.g., Brown v.

14  Palmateer, 379 F.3d 1089, 1095 (9th Cir. 2004) (applying Garner to ex post facto analysis of parole

15  law under AEDPA review).

16       Retroactive changes to a state's parole laws, in some instances, may be violative of the Ex

17  Post Facto Clause.  Garner, 529 U.S. at 250 (citing Lynce v. Mathis, 519 U.S. 433, 445-46 (1925)).

18  In order to establish an ex post facto violation based on a state's retroactive application of a parole

19  statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the

20  prisoner's] incarceration."  Id.  Ex post facto analysis of a facially neutral parole law requires a case-

21  specific, fact-intensive analysis regarding the risk posed by the law to the particular prisoner

22  challenging its application.  See, e.g., id. (prisoner "must show that as applied to his own sentence

23  the law created a significant risk of increasing his punishment") (emphasis added).  Accordingly, on

24  March 19, 2009, the Magistrate Judge scheduled an evidentiary hearing in this matter in order to

25  permit Petitioner to present evidence that, as applied to him, article V, section 8(b) presents a

26  "significant risk" of prolonging his incarceration, pursuant to Garner.  Respondent filed a motion to

27  reconsider the Magistrate Judge's order scheduling an evidentiary hearing on April 2, 2009.

28  ///

1    **B. Respondent's Contentions**

2    Respondent's motion for reconsideration may not be granted unless the Magistrate Judge's

3    order setting the evidentiary hearing is clearly erroneous or contrary to law.  28 U.S.C. §

4    636(b)(1)(A); Fed. R. Civ. P. 72(a).  Respondent advances four arguments in support of its

5    contention that the Magistrate Judge's order is clearly erroneous or contrary to law.  Respondent

6    contends that **(1)** section 2254(e)(2) prohibits the Court from holding an evidentiary hearing; **(2)** the

7    state court's decision denying Petitioner's state habeas petition is not contrary to or an unreasonable

8    application of clearly established federal law; **(3)** <u>Johnson v. Gomez</u>, 92 F.3d 964 (9th Cir. 1996)

9    forecloses Petitioner's claim; and **(4)** the Court may not consider Petitioner's parole history

10   subsequent to 2004.[4]

11   **1. Section 2254(e)(2) Does not Preclude and Evidentiary Hearing**

12   Rule 8 of the Rules Governing Section 2254 Cases authorizes federal habeas courts to hold

13   evidentiary hearings, subject to the limitations of 28 U.S.C. § 2254(e)(2).  Section 2254(e)(2)

14   prevents federal habeas courts from holding an evidentiary hearing where the petitioner failed to

15   develop the factual basis of a claim in state court proceedings, unless certain conditions are met:

16   (e)(2) If the applicant has failed to develop the factual basis of a claim in State court
     proceedings, the court shall not hold an evidentiary hearing on the claim unless the
17   applicant shows that--
        (A) the claim relies on--
18          (i) a new rule of constitutional law, made retroactive to cases on collateral
     review by the Supreme Court, that was previously unavailable; or
19          (ii) a factual predicate that could not have been previously discovered through
     the exercise of due diligence; and
20       (B) the facts underlying the claim would be sufficient to establish by clear and
     convincing evidence that but for constitutional error, no reasonable factfinder would
21   have found the applicant guilty of the underlying offense.

22   28 U.S.C. § 2254(e)(2) (2009).  "Under the opening clause of § 2254(e)(2), a failure to develop the

23   factual basis of a claim is not established unless there is lack of diligence, or some greater fault,

24   attributable to the prisoner or the prisoner's counsel."  <u>Williams v. Taylor</u>, 529 U.S. 420, 432 (2000).

25   "If there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has

26

27   _____

     [4] Respondent's argument in section I(D) of the motion for reconsideration is not relevant to the threshold inquiry of whether
28   the Court may conduct an evidentiary hearing.  Rather, Respondent's argument concerns only the scope of the evidence which
     may be presented at the hearing.

1    not 'failed to develop' the facts under § 2254(e)(2)'s opening clause." <u>Id.</u> at 437.  A petitioner is

2    entitled to an evidentiary hearing if he can show that:

3        (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state
         factual determination is not fairly supported by the record as a whole; (3) the
4        fact-finding procedure employed by the state court was not adequate to afford a full
         and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5)
5        the material facts were not adequately developed at the state-court hearing; or (6) for
         any reason it appears that the state trier of fact did not afford the habeas applicant a
6        full and fair hearing.

7    <u>Earp v. Ornoski,</u> 431 F.3d 1158, 1167 (9th Cir. 2005) (citing <u>Townsend v. Sain,</u> 372 U.S. 293, 313

8    (1963) <u>overruled on other grounds by</u> <u>Keeney v. Tamayo-Reyes,</u> 504 U.S. 1, 5(1992)).

9        Petitioner presented the essential facts underlying his ex post facto claim to the state court by

10   establishing that the Governor reversed two grants of parole to Petitioner pursuant to a retroactive

11   statute.  (Answer, Ex. E at 27-28).  In his state habeas petition before the Superior Court, Petitioner

12   averred:

13       Imposition of a new obstacle to his parole, almost certain gubernatorial reversal,
         which has extended his prison term...and has extinguished two valid grants of
14       petitioner's parole by BPT to date, constitutes a classic example of ex post facto.
         (Citations).
15
16   (Id.).  Petitioner also identified the appropriate evidentiary standard the Superior Court should have

17   applied to Petitioner's claim:

18       Petitioner, to establish an ex post facto violation, need not prove that he is necessarily
         serving a longer prison term due to the new law than would have been the case had it
19       not been encated...his obligation [is] to establish that application of the new law to his
         case created a "significant risk of increasing his punishment." *See Garner v. Jones*,
20       (200) 529 U.S. 244, 256.

21   (Id.).  Petitioner produced his parole history, the transcript of his 2004 parole hearing, the Governor's

22   reversal letter, and an internal CDCR memo concerning the Governor's practice of reviewing parole

23   grants, but not parole denials, as evidence that article V, section 8(b) presents a risk of prolonging

24   Petitioner's incarceration.  This evidence was sufficient to develop the factual basis of Petitioner's ex

25   post facto claim.

26       Despite the fact that Petitioner adequately developed the factual basis of his claim and

27   requested that the Superior Court apply the appropriate evidentiary standard to the evidence, the

28   Superior Court held that Petitioner's claim was foreclosed as a matter of law by <u>In re Rosenkrantz,</u>

29 Cal.4th 616, 691 (Cal. 2002).[5]   The Superior Court's holding that <u>Rosenkrantz</u> barred Petitioner's ex post facto claim as a matter of law precluded Petitioner from developing further evidence in support of his claim before the state courts.   The Superior Court would not have held an evidentiary hearing unless it determined that Petitioner's entitlement to relief depended on resolution of an issue of fact,  <u>see</u> Cal. R. Ct. § 4.551(f) (Thompson-West, 2005),[6] and the Superior Court's holding also prevented Petitioner from obtaining discovery.   No statutory authority expressly authorizes post-conviction discovery in a California habeas corpus proceeding, <u>Board of Prison Terms v. Superior Court</u>, 130 Cal.App.4th 1212,1240 (Cal. Ct. App. 2005), and California case law establishes that discovery may not be granted in a habeas action with respect to claims that are foreclosed as a matter of law, <u>see</u> <u>People v. Gonzalez</u>, 51 Cal.3d 1179, 1261 (Cal. 1990) (no discovery on issues that fail to state a prima facie claim).

It is clear that the Superior Court concluded, erroneously, that Petitioner's ex post facto claim was foreclosed as a matter of law; this error prevented Petitioner from further developing evidence in support of his claim.   Where a state court's erroneous application of law prevents a petitioner from fully developing the factual basis of her claim in state court, a federal habeas court may conduct an evidentiary hearing.   See <u>Frantz v. Hazey</u>, 533 F.3d 724, 745 (9th Cir. 2008) (where state court concluded, erroneously, that no facts were required to resolve petitioner's claim, federal habeas court was required to hold an evidentiary hearing); <u>see also</u> <u>Williams v. Runnels</u>, 432 F.3d 1102, 1110 n.13 (9th Cir. 2006) (section 2254(e)(2) inapplicable where state court applies erroneous legal standard); <u>Earp</u>, 431 F.3d at 1166-67 (petitioner entitled to an evidentiary hearing where state court

---

[5] The Superior Court devoted two sentences to Petitioner's ex post facto claim: "the Court rejects the remainder of petitioner's arguments including that the Governor's reversal constitutes an ex post facto violation...the court has already concluded that the Governor's review does not amount to an ex post facto violation. (*Rosenkrantz*, supra, at 637-652)." (Answer, Ex. F). The Superior Court's language reflects a statement of law, not a determination of facts.

[6] California amended Rule 4.551 effective January 1, 2009, but the amendment did not implicate section 4.551(f). Section 4.551(f) provides in relevant part: "Within 30 days after the filing of any denial or, if none is filed, after the expiration of the time for filing a denial, the court must either grant or deny the relief sought by the petition or order an evidentiary hearing. An evidentiary hearing is required if, after considering the verified petition, the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact. The petitioner must be produced at the evidentiary hearing unless the court, for good cause, directs otherwise."

1   does not afford full and fair hearing on an issue); <u>Holland v. Jackson</u>, 542 U.S. 649, 652-53 (2004)

2   (evidentiary hearing permissible where petitioner is not at fault for failing to develop evidence in

3   state court).  Accordingly, because the Court finds that Petitioner exercised reasonable diligence in

4   presenting the factual basis of his claim before the state courts, that the merits of the factual dispute

5   were not resolved in the state court proceedings, and that the fact-finding procedure employed by the

6   state court was not adequate to afford a full and fair hearing, Petitioner is entitled to an evidentiary

7   hearing in this federal habeas action.  <u>See</u> <u>Earp</u>, 431 F.3d at 1167.

8   **2. AEDPA Deference Does Not Preclude an Evidentiary Hearing**

9       Respondent contends that "the state courts' decisions [denying Petitioner's state habeas

10  petitions]...are not contrary to clearly established federal law, as an as-applie [sic] analysis is not

11  required."  (Motion for Reconsideration at 7).  Respondent's contention is based on its assertion that

12  the standard set forth by the United States Supreme Court in <u>Garner</u> does not apply to article V,

13  section 8(b). (Id. at 7-8).  Respondent also argues that because the California Supreme Court's

14  holding in <u>In re Rosenkrantz</u>, 29 Cal.4th 616 (Cal. 2002) was reasonable, the Superior Court's order

15  denying Petitioner's state habeas petition was also reasonable because the Superior Court cited to

16  <u>Rosenkrantz</u>.(Id.)

17      **(i)** ***Garner* "Clearly Established" that an As-Applied Analysis is Required**

18      In <u>Garner</u>, the United States Supreme Court held that retroactive application of a parole

19  statute violates a person's rights under the Ex Post Facto Clause of the United States Constitution if

20  the statute "creates a significant risk of prolonging [the prisoner's] incarceration."  529 U.S. at 255.

21  Under <u>Garner</u>, ex post facto challenges to a facially neutral parole statute require an as-applied

22  analysis. <u>E.g.</u>, <u>United States v. Turner</u>, 548 F.3d 1094, 1100 (D.C. Cir. 2008).

23      Respondent attempts to distinguish article V, section 8(b) from the statute at issue in <u>Garner</u>

24  on the basis that the statute at issue in <u>Garner</u> concerned the interval between parole hearings,

25  whereas article V, section 8(b) grants the Governor the power to reverse parole board decisions.[7]  For

26  ─────────────────────

27  [7] Respondent's contention that the Court should not subject article V, section 8(b) to <u>Garner</u>'s as-applied analysis is contrary
    to the Ninth Circuit's reasoning in <u>Johnson v. Gomez</u>, a case on which Respondent relies heavily.  In <u>Johnson</u>, the Ninth

28  Circuit rejected an ex post facto challenge to article V, section 8(b) based on the rationale set forth by the Supreme Court
    in <u>California Department of Corrections v. Morales</u>, 115 S.Ct. 1597, 1603 (1995).  <u>Johnson</u>, 92 F.3d at 967-68.  Like the

1   purposes of ex post facto analysis, the difference between the statute at issue in <u>Garner</u> and article V,

2   section 8(b) is irrelevant, as the dispositive inquiry is "whether retroactive application of the change

3   in [parole] law create[s] 'a sufficient risk of increasing the measure of punishment attached to the

4   covered crimes.'" <u>Garner</u>, 529 U.S. at 250 (citing <u>Beazell v. Ohio</u>, 269 U.S. 167, 169-70 (1925)).

5   "The Supreme Court need not have addressed the identical factual circumstances at issue in a case in

6   order for it to have created 'clearly established' law governing that case...rather, it is enough that the

7   Supreme Court has prescribed a rule that plainly governs the petitioner's claim." <u>McQuillion v.</u>

8   <u>Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002).[8]  Nine circuit courts of appeals that have confronted ex

9   post facto challenges to parole statutes post-<u>Garner</u> have recognized that <u>Garner</u> requires an as-

10  applied analysis.  <u>See, e.g.</u>, <u>Brown</u>, 379 F.3d at1095;  <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374,

11  385-87 (3rd Cir. 2003); <u>Wallace v. Quarterman</u>, 516 F.3d 351, 356 (5th Cir. 2008); <u>Michael v. Ghee</u>,

12  498 F.3d 372, 383 (6th Cir. 2007); <u>Glascoe v. Bezy</u>, 421 F.3d 543, 546-47 (7th Cir. 2005); <u>Nolan v.</u>

13  <u>Thompson</u>, 521 F.3d 983, 988-89 (8th Cir. 2008); <u>Henderson v. Scott</u>, 260 F.3d 1213, 1216-17 (10th

14  Cir. 2001);  <u>Swan v. Ray</u>, 293 F.3d 1252, 1253-54 (11th Cir. 2002); <u>Turner</u>, 548 F.3d at1100.

15  District Courts in the First, Second, and Fourth Circuits have also employed <u>Garner</u>'s as-applied

16  analysis.  <u>See Iacaboni v. United States</u>, 251 F. Supp. 2d 1015, 1041 (D. Mass. 2003); <u>Graziano v.</u>

17  <u>Pataki</u>, 2006 U.S. Dist. LEXIS 52556* 30-33 (S.D.N.Y. 2006); <u>Bennett v. LaManna</u>, 2007 U.S. Dist.

18  LEXIS 21601*22-23 (D.S.C. 2007).

19  _____

20  statute at issue in <u>Garner</u>, the law challenged in <u>Morales</u> granted the parole board discretion to extend the interval between
    a prisoner's parole hearings.  <u>Morales</u>, 115 S.Ct. at 1603.  The <u>Johnson</u> Court took for granted the notion that <u>Morales</u> set
21  forth the applicable framework for evaluating the petitioner's challenge to article V, section 8(b), despite the difference
    between the Governor's review power and the statute at issue in <u>Morales</u>.  <u>See Johnson</u>, 92 F.3d at 967.  Thus, <u>Johnson</u> holds
22  implicity that article V, section 8(b) and statutes affecting the interval between parole hearings are sufficiently similar to be
    evaluated under the same constitutional rubric for the purpose of ex post facto analysis.  <u>See id.</u>
23

24  [8] <u>McQuillion</u> holds that application of the "some evidence" standard to California parole determinations is "clearly
    established federal law" for the purposes of AEDPA review.  The "some evidence" requirement was established by
25  <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985), in which the Supreme Court held that prison disciplinary hearings resulting
    in the revocation of good-time credits must be supported by "some evidence."  Compared to the differences between prison
26  disciplinary hearings and parole determinations, the differences between article V, section 8(b) and the statute at issue in
    <u>Garner</u> are trivial.  <u>See Irons v. Carey</u>, 506 F.3d 951, 952-56 (Kleinfeld, J., dissenting) (discussing substantial differences
27  between prison disciplinary proceedings and parole determinations). As the law of the Ninth Circuit holds that <u>Hill</u> "clearly
    established" the some evidence requirement in the parole context for the purposes of AEDPA review, <i>a fortiori</i>, <u>Garner</u>'s
28  as-applied analysis requirement must be clearly established for the purpose of conducting ex post facto review of facially
    neutral parole statutes.

1    The law of the Ninth Circuit demonstrates that Garner applies to parole statutes that do not

2    implicate the interval between parole hearings.  See Brown, 379 F.3d at 1096 (applying Garner to

3    parole regulation that gave parole board new discretion to find that a prisoner is a danger to the

4    community despite the contrary conclusions of a psychological evaluation); see also Himes v.

5    Thompson, 336 F.3d 848, 855 n.4 (9th Cir. 2003) (noting possibility that petitioner could prove an

6    individual ex post facto violation under Garner with respect to statute that removed the parole

7    board's ability to grant a continuum of sanctions for aggravated violation of parole in favor of an

8    all-or-nothing choice between a ninety-day sanction and outright denial of release).  Other circuit

9    courts of appeals have also applied Garner to a wide range of parole statutes that do not implicate the

10   interval between parole hearing.  See Dyer v. Bowlen, 465 F.3d 280, 288 (6th Cir. 2006) (holding

11   that although petitioner's claims were "factually distinguishable from those in Morales and Garner,

12   the rule of constitutional law pronounced in those cases remains the proper standard by which to

13   measure an ex post facto violation" and applying Garner to retroactive statue that increased parole

14   board's discretionary power); Mickens-Thomas, 321 F.3d at 385-87 (applying Garner to new parole

15   regulation that placed added emphasis on certain pre-existing parole criteria); Wallace, 516 F.3d at

16   355-56 (new parole law increased number of parole board members who voted on suitability

17   determination); Glascoe, 421 F.3d at 548 (new parole criteria); Ghee, 498 F.3d at 383 (same);

18   Turner, 548 F.3d at 1100 (applying Garner to retroactive sentencing guidelines); Hunter v. United

19   States Parole Comm'n, 2009 U.S. App. LEXIS 1908*5-7 (5th Cir. 2009) (unpublished) (retroactive

20   statute establishing new parole guidelines and decision making body).  Accordingly, as-applied

21   analysis of ex post facto challenges to facially neutral parole statutes is clearly established federal

22   law for the purposes of AEDPA review.  See Himes, 336 F.3d at 855 n.4 (noting that Garner codified

23   pre-existing precedent that satisfied the "clearly established" requirement of 28 U.S.C. § 2254(d)(1)

24   and applying Garner under AEDPA review); Brown, 379 F.3d at 1096 (holding that state court's

25   dismissal of ex post facto claim was objectively unreasonable under AEDPA because state court

26   failed to follow Garner's "express guidance on ex post facto cases"); see also Wallace, 516 F.3d at

27   356 (applying Garner to statute that increased number of voting parole board members under

28   AEDPA review); Hairston v. Kane, 2009 U.S. Dist. LEXIS 27072 *29 (N.D. Cal. 2009) (applying

1   Garner to ex post facto challenge to article V, section 8(b) in AEDPA context); McGruder v.

2   Schwarzenegger, 2008 U.S. Dist. LEXIS 82703 *13 (N.D. Cal. 2008) (same); Seiler v. Brown, 2007

3   U.S. Dist. LEXIS 66412 *13 (N.D. Cal. 2007) (same); Heller v. Powers-Mendoza, 2007 U.S. Dist.

4   LEXIS 27432 *2-3 & n.1 (E.D. Cal. 2007) (same); Smith v. Finn, 2007 U.S. Dist. LEXIS 6186 *26-

5   29 (E.D. Cal. 2007) (noting the possibility of ex post facto violation but dismissing claim as moot).

6   **(ii) Reliance on *In re Rosenkrantz* Does not Render the State Court's**
     **Decision Reasonable**

7

8   The Superior Court cited the California Supreme Court's decision in In re Rosenkrantz as

9   authority for its decision denying the ex post facto claim alleged in Petitioner's state habeas petition.

10  In Rosenkrantz, the California Supreme Court discussed Garner but held that the statute at issue in

11  Garner was distinguishable from section V, article 8(b).[9]  29 Cal.4th at 650.  The Rosenkrantz Court

12  concluded that the Governor's review power does not violate the Ex Post Facto Clause as a matter of

13  law.  Id. at 651.  Respondent contends that a) Rosenkrantz was not an unreasonable application of

14  federal law, b) the Superior Court relied on Rosenkrantz to deny Petitioner's ex post facto claim, c)

15  therefore the Superior Court's decision was not an unreasonable application of federal law .

16  Respondent's argument fails to account for the fact that Petitioner's case is distinguishable

17  from the petitioner's case in Rosenkrantz.  Because Garner requires an as-applied analysis of

18  Petitioner's claim, it was unreasonable for the Superior Court to rely on Rosenkrantz to deny

19  Petitioner's claim despite the fact that Petitioner's factual circumstance is distinguishable from the

20  _____

21  [9] The Rosenkrantz Court failed to conduct an as-applied analysis of article V, section 8(b) because, in its view, the
    "procedural nature" of article V, section 8(b) rendered Garner inapplicable to it.  Rosenkrantz, 29 Cal.4th at 650; contra Dyer,

22  465 F.3d at 288-89 (holding that state court's rejection of ex post facto claim on the ground that challenged statute was
    "procedural in nature" was error under AEDPA standard of review).  The Rosenkrantz Court's failure to conduct an as-

23  applied analysis is illustrated by the Court's assumption that "were petitioner's ex post facto argument correct, every
    gubernatorial reversal of a Board decision granting parole in these cases would have been constitutionally flawed."  Id. at

24  638.  Garner teaches, however, that a neutral parole statute may be violative of the Ex Post Facto with respect to some
    prisoners but not to others.  529 U.S. at 255 (conducting as-applied analysis of petitioner's claim); see also Nulph v. Faatz,

25  27 F.3d 451, 456 (9th Cir. 1994) (per curiam) (recognizing that "even if the new law is not disadvantageous to defendants
    in general, an individual will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be said

26  with assurance' that he would have received less severe punishment under the prior scheme").  It is thus clear that Rosenkrantz
    does not reflect an as applied analysis. See Heller v. Powers-Mendoza, 2007 U.S. Dist. LEXIS 27432 *3 n.1 (E.D. Cal. 2007)

27  (disapproving of the holding in Rosenkrantz because the Rosenkrantz Court failed to conduct proper as-applied analysis under

28  Garner).

petitioner's circumstance in <u>Rosenkrantz</u>. In assessing the petitioner's ex post facto claim in <u>Rosenkrantz</u>, the California Supreme Court held "petitioner cannot maintain persuasively that in this instance article V, section 8(b), has resulted in the denial of parole of an individual whom the Board, in the exercise of its independent judgment, has determined is suitable for parole." <u>Rosenkrantz</u>, 29 Cal.4th at 637-38.[10] Whereas the parole board granted the petitioner in <u>Rosenkrantz</u> parole only after an appellate court ordered the board to do so under threat of contempt, Petitioner had been found suitable for parole on at least three separate occasions prior to the Governor's reversal in 2004. The California Supreme Court's statement in <u>Rosenkrantz</u> that "petitioner cannot maintain persuasively that in this instance article V, section 8(b), has resulted in the denial of parole of an individual whom the Board, in the exercise of its independent judgment, has determined is suitable for parole," does not apply to Petitioner. Accordingly, it was unreasonable for the Superior Court not to conduct an as-applied analysis of Petitioner's claim based on the holding in <u>Rosenkrantz</u>. <u>See</u> <u>Brown</u>, 379 F.3d at 1096 (holding that state court was objectively unreasonable for failing to apply <u>Garner</u> standard); <u>see also</u> <u>Parker v. Kelchner</u>, 429 F.3d 58, 64 n.5 (3rd Cir. 2005) (holding that because <u>Garner</u> requires an as-applied analysis, outcome of petitioner's state habeas petition was not a foregone conclusion despite the fact that the Pennsylvania Supreme Court had already rejected ex post facto challenge to statute at issue).

### 3. *Johnson v. Gomez* Does not Foreclose Petitioner's Ex Post Facto Claim

Respondent cites <u>Johnson v. Gomez</u> for the proposition that the Ninth Circuit has foreclosed Petitioner's ex post facto challenge to article V, section 8(b). (Answer at 15). Respondent's contention is erroneous for two principal reasons: 1) Respondent's construction of <u>Johnson</u> is overbroad; and 2) the facts of Petitioner's case are distinguishable from the facts addressed in <u>Johnson</u>, and the Court must conduct an as-applied analysis of Petitioner's claim.

///

///

---

[10] Under an as-applied analysis, the California Supreme Court's finding that the petitioner in <u>Rosenkrantz</u> could not demonstrate that article V, section 8(b) adversely affected him would have ended the inquiry. <u>See, e.g.</u>, <u>Garner</u>, 529 U.S. at 255.

1          **(i) Respondent's Construction of _Johnson_ is Overbroad**

2          A careful reading of Johnson reveals that it cannot stand for the proposition that, as a matter

3   of law, article V, section 8(b) never violates the Ex Post Facto Clause.  The law of the Ninth Circuit

4   recognized that ex post facto challenges to facially neutral laws require an as-applied analysis at the

5   time Johnson was decided.  See Nulph v. Faatz, 27 F.3d 451, 456 (9th Cir. 1994) (per curiam)

6   (recognizing that "even if the new law is not disadvantageous to defendants in general, an individual

7   will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be said

8   with assurance' that he would have received less severe punishment under the prior scheme").  The

9   Johnson Court expressly acknowledged Nulph, stating, "Ninth Circuit authority...instructs us to look

10  to the actual effect of the new law _upon the petitioner_." Johnson, 92 F.3d at 968 (citing Nulph, 27

11  F.3d at 451) (emphasis added). Viewed in light of Nulph, the Ninth Circuit's precise holding in

12  Johnson was "that the application of [article V, section 8(b)] to authorize the governor's review of

13  _Johnson's_ grant of parole did not violate the Ex Post Facto Clause" because _Johnson_ "could not

14  demonstrate that the change in parole procedures created more than a speculative risk of increasing

15  _his_ punishment." 93 F.3d at 967-68 (emphasis added).  Although Johnson does contain the broad

16  pronouncement that "the district court correctly recognized that ex post facto principles do not bar

17  application of [article V, section 8(b)] to those convicted and sentenced before its effective date,"

18  Johnson, 92 F.3d at 965, to the extent this statement was meant to reach persons with claims that are

19  factually distinguishable from the petitioner's claim in Johnson, this statement is technically dicta

20  because it was unnecessary to the decision, see, e.g., In re Primus, 436 U.S. 412, 439 (1978)

21  (Blackmun, J., concurring) (rejecting as dicta statements unnecessary to the holding of a case).

22          Respondent's construction of Johnson also ignores the impact of the Supreme Court's

23  intervening decision in Garner, which refined the standard applicable to ex post facto challenges to

24  facially neutral parole laws.  Prior to 1995, the Ninth Circuit employed a nebulous standard to ex

25  post facto challenges to parole statutes that required a prisoner to demonstrate only that a retroactive

26  parole law operated to her "disadvantage."  See, e.g., Watson v. Estelle, 886 F.2d 1093, 1096-96 (9th

27  Cir. 1989) **(**rejecting prisoner's claim where retroactive law that changed timing of parole hearings

28  did not operate to prisoner's disadvantage); Perveler v. Estelle, 974 F.2d 1132, 1135 (9th Cir. 1992)

1   ("to make out an Ex Post Facto violation, Perveler must show the law was retrospectively applied

2   and operated to his disadvantage") (citing Weaver v. Graham, 450 U.S. 24, 29 (1981)); Connor v.

3   Estelle, 981 F.2d 1032, (9th Cir. 1992) (rejecting claim on the grounds that prisoner had not been

4   disadvantaged by retroactive parole statute).  The Ninth Circuit's ex post facto standard reached its

5   outer limit in Morales v. California Dep't of Corrections, 165 F.3d 1001, 1004 (9th Cir. 1994)

6   overruled by 514 U.S. 499 (1995), in which the Ninth Circuit held, "any retrospective law making

7   parole hearings less accessible would effectively increase the sentence and violate the ex post facto

8   clause."

9          Morales concerned a challenge to the retroactive application of California Penal Code section

10  3041.5 (b)(2), pursuant to which the Board of Prison Terms (BPT)  was given the statutory authority

11  to delay subsequent parole hearings for up to three years for prisoners convicted of committing

12  multiple murders.  514 U.S. at 503.  The operative parole statute in place at the time the petitioner in

13  Morales completed his commitment offense required the BPT to conduct annual parole hearings for

14  all prisoners eligible for parole.  In reversing the Ninth Circuit's holding that section 3041.5 (b)(2)

15  violated the Ex Post Facto Clause, the Supreme Court stated that in order to determine:

16          the constitutionality of the 1981 amendment, we must determine whether it produces
        a *sufficient risk* of increasing the measure of punishment attached to the covered
17          crimes.  We have previously declined to articulate a single "formula" for identifying
        those legislative changes that have a sufficient effect on substantive crimes or
18          punishments to fall within the constitutional prohibition, *and we have no occasion to
        do so here*. The amendment creates only the most speculative and attenuated
19          possibility of producing the prohibited effect of increasing the measure of punishment
        for covered crimes, and such conjectural effects are insufficient under *any* threshold
20          we might establish under the Ex Post Facto Clause.

21
22  Id. at 509-10 (citations omitted) (emphasis added).[11]

23  ///

24  [11] The fact that section 3041.5(b)(2) "has no effect on any prisoner unless the [BPT] has first concluded, after a hearing, not
only that the prisoner is unsuitable for parole, but also that 'it is not reasonable to expect that parole would be granted at a
25  hearing during the following years,'" was crucial to the Supreme Court's holding in Morales. Id. at 511. The Supreme Court
also noted that section 3041.5(b)(2) applies only to "a class of prisoners for whom the likelihood of release on parole is quite
26  remote." Id. Because the BPT had already found that Morales was not suitable for parole and that there was no reason to
expect parole would be granted during the following years, and because Morales was a member of a class of prisoners for
27  whom release on parole was already remote, the practical effect of a hearing postponement pursuant to section 3041.5 (b)
(2) was not significant. See id. at 512-13. Given *these circumstances*, Morales could demonstrate nothing more than "the
28  most speculative and attenuated risk" that section 3041.5 (b) (2) would increase the punishment for his crimes. See id.

As noted in the passage above, Morales did not impose a standard for determining what constitutes a "sufficient risk" of increasing the measure of punishment such that retroactive application violates the Ex Post Facto Clause. Id.  Thus, when the Ninth Circuit decided Johnson approximately one year after the Supreme Court's decision in Morales, the High Court had not yet defined the standard applicable to ex post facto claims regarding facially neutral parole laws. In attempting to discern the appropriate standard with which to evaluate the petitioner's ex post facto claim in Johnson, the Ninth Circuit relied principally on Morales and Dobbert v. Florida, 432 U.S. 282, 294 (1977)[12]:

> Johnson is ... unable to demonstrate that an increase in his punishment *actually occurred*, because, like the petitioner in Morales, he had not been granted parole under the old law.  Morales, 115 S. Ct. at 1600. Under the old law, the BPT's decision would have been subjected to no review.  Johnson's case is like Dobbert, where the petitioner could only speculate whether the jury would have imposed a life sentence had it possessed the final power to decide.  Dobbert, 432 U.S. at 294 & n.7. Here, because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said *with certainty* that the BPT would have granted Johnson parole had it possessed the final review authority...¶ In Nulph....the sentence increase for a certain class of prisoners was a mathematical certainty. Id.  In order for Johnson to demonstrate a similar, *inevitable* increase in his sentence, he would have to show "with assurance," to use the Dobbert language, quoted in Nulph, that he *would have* received parole under the old system. This Johnson simply cannot do.

Johnson, 92 F.3d at 967-68 (emphasis added).[13]

---

[12] Dobbert concerned a Florida law that changed the roles of the judge and jury with respect to imposition of a death sentence. 432 U.S. at 290. Under the revised Florida statute, applied retroactively to Dobbert, the jury renders an advisory decision, and the judge then weighs the circumstances and determines whether or not to impose the death sentence. Id. at 291-92. The jury recommended that Dobbert be sentenced to life in prison, but the trial judge sentenced Dobbert to death. Id. It is clear that the Dobbert Court did not conduct an "as-applied"analysis; rather, the court held that the new law was "facially ameliorative" compared to the previous Florida law, under which the death penalty was the default punishment for capital crimes. See id. at 296-97. Because the statute implicated by Dobbert was facially ameliorative, it could not possibly have presented a significant risk of increasing Dobbert's punishment. Under the previous sentencing scheme, Dobbert would have received the death penalty as a matter of course.

[13] The Johnson Court also stated, "We cannot materially distinguish this change in the law from that at issue in Mallett v. North Carolina, 181 U.S. at 589, 590 (1901)." In Mallett, the Supreme Court found no ex post facto violation where a new law authorized the North Carolina Supreme Court to review appellate court decisions overturning a person's conviction. Under the statute in place at the time the petitioner in Mallet committed his crime, the appellate court's decision overturning his conviction would have been final. Mallet predates Garner by ninety-nine years.  Further, the statute at issue in Mallet did not concern the discretionary decisions of elected officials but rather the legal conclusions of state appellate courts, which are less susceptible to the political pressures that undergird the Ex Post Facto Clause. See Richmond v. J. A. Croson Co., 488 U.S. 469, 513-514 (1989) ("The constitutional prohibitions against the enactment of ex post facto laws and bills of attainder reflect a valid concern about the use of the political process to punish or characterize past conduct of private citizens. It is the judicial system, rather than the legislative process, that is best equipped to identify past wrongdoers and to fashion

The Ninth Circuit concluded its decision in <u>Johnson</u> by analogizing the petitioner's situation to ex post facto jurisprudence in the sentencing context:

> Cases assessing the effects of sentencing guidelines amendments also require that the prisoner demonstrate an increase in punishment *with certainty* before finding an Ex Post Facto Clause violation...Because we cannot say with any *similar certainty* that the retroactive application of Proposition 89 in Johnson's case resulted in an *actual increase* in punishment called for under prior law, the application did not violate ex post facto principles and the district court correctly denied relief.

<u>Johnson</u>, 92 F.3d 934 (emphasis added).[14]

Although <u>Morales</u> expressly disclaimed establishment of a single "formula" for identifying ex post facto violations, it is clear that the <u>Johnson</u> Court inferred a lofty standard of proof from the result reached in <u>Morales</u>. The language emphasized in the passages above indicates that the <u>Johnson</u> Court imposed an onerous evidentiary standard - petitioner would have had to demonstrate "with certainty" that his punishment would have been "actually" or "inevitably" increased. <u>See id.</u> at 967. After <u>Garner</u>, however, it is clear that a petitioner need not demonstrate that his punishment was increased "with certainty." <u>See, e.g.</u>, <u>Brown</u>, 379 F.3d at 1096 (applying <u>Garner</u> standard without referencing <u>Johnson</u>'s certainty standard); <u>see also</u> <u>Dyer</u>, 465 F.3d at 288 (stating that Tennessee Court of Appeal's holding, that petitioner must show that new parole regulation actually increased his sentence in order to obtain relief, was contrary to clearly established federal law set forth in <u>Garner</u>). The standard articulated by the Supreme Court in <u>Garner</u> is clearly less burdensome than the standard applied in <u>Johnson</u>:

> When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. The litigation in Morales concerned a statute covering inmates convicted of more than one homicide and proceeded on the assumption that there were no relevant differences between inmates for purposes of discerning whether retroactive application of the amended California law violated the Ex Post Facto Clause. *In the case before us, respondent must show*

---

remedies that will create the conditions that presumably would have existed had no wrong been committed") (Stevens, J., concurring); <u>see also</u>; <u>Landgraf v. Usi Film Prods.</u>, 511 U.S. 244, 266 ("The Legislature's unmatched powers...[and] responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals"); <u>Calder</u>, 3 U.S. 386, 387-389 (opinion of Chase, J.) (discussing rationale for ex post facto clause).

[14] The United States Court of Appeals for the District of Columbia Circuit applies <u>Garner</u> in the sentencing context. <u>See</u> <u>Turner</u>, 548 F.3d at 1100.

1              *that as applied to his own sentence the law created a significant risk of increasing his*
2              *punishment.* This remains the issue in the case, though the general operation of the
             Georgia parole system may produce relevant evidence and inform further analysis on
3              the point.

4 Garner, 529 U.S. at 255 (emphasis added).  Thus, Garner teaches that Petitioner may be entitled to

5 relief if he can establish that as applied to him, article V, section 8 (b) creates a "significant risk" of

6 prolonging his incarceration.[15]  Petitioner need not show "with certainty" that he would have been

7 granted parole sooner under the previous parole statute.  See id.

8        In several cases decided after Garner, the Ninth Circuit evaluated ex post facto challenges to

9 parole laws under Garner's "significant risk" standard without reference to Johnson or its "certainty"

10 requirement. See Brown, 379 F.3d at 1095 (applying Garner); see also Himes v. Thompson, 336 F.3d

11 848, 851-53 (9th Cir. 2003) (same); Scott v. Baldwin, 225 F.3d 1010, 1022 n.5 (9th Cir. 2000)

12 (recognizing "significant risk" standard as an alternative to facial challenge to parole statutes); Hess

13 v. Hill, 265 Fed.Appx.637, 638 (9th Cir. 2008) (unpublished) ("[parole board] may not apply a

14 parole release statute that was not in effect at the time the prisoner committed his crimes if

15 it...[creates] a significant risk that the statute's application will increase the length of incarceration").

16 Several District Court's in the Ninth Circuit have held that Garner now provides the applicable

17 standard for evaluating ex post facto challenges to article V, section 8(b).  See Hairston v. Kane,

18 2009 U.S. Dist. LEXIS 27072 *29 (applying Garner to ex post facto challenge to article V, section

19 8(b) in AEDPA context); Seiler v. Brown, 2007 U.S. Dist. LEXIS 66412 *13 (noting Johnson but

20 proceeding to evaluate petitioner's claim under Garner); Heller v. Powers-Mendoza, 2007 U.S. Dist.

21

22 _____

[15] Garner also reveals that a fundamental premise underlying the rationale in Johnson is flawed.  The Johnson Court stated,

23 "Johnson is ... unable to demonstrate that an increase in his punishment actually occurred, because, *like the petitioner in Morales, he had not been granted parole under the old law.*" Johnson, 92 F.3d at 967-68 (emphasis added) (citing Morales,

24 115 S. Ct. at 1600).  In Garner, however, the Supreme Court held that a prisoner who had not been paroled under a previous Georgia parole statute could nevertheless demonstrate that a new Georgia parole statute violated the Ex Post Facto Clause by showing that the new statute created a "significant risk" of prolonging his incarceration.  529 U.S. at 248.  Like Morales,

25 Garner concerned a statute which changed the interval of time between proceedings to reconsider inmates for parole after an initial denial of parole.  Were the statement emphasized above from Johnson correct, the petitioner in Garner would have

26 been "unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in Morales, he had not been granted parole under the old law." Johnson, 92 F.3d at 967-68.  Contrary to the reasoning of Johnson, however,

27 the Garner Court held that the petitioner needed to demonstrate only a significant risk of prolonged incarceration in order to obtain relief and remanded the case to the district court for development of the factual record.

28

1   LEXIS 27432 *2-3 & n.1 (noting that post-Garner, petitioner's claim regarding Section 8 is a

2   question of fact that must be evaluated on case by case basis); but see Marquez v. Rawers, 2008 U.S.

3   Dist. LEXIS 20109 *22-24 (E.D. Cal. 2007) (holding that Garner "does not enunciate a new standard

4   for proving an ex post facto violation" challenge to article V, section 8(b) with citation to Johnson);

5   Walker v. Evans, 2009 U.S. Dist. LEXIS 16186 *9-10 (E.D. Cal. 2009) (denying petitioner's motion

6   for reconsideration on the grounds that Garner overruled Johnson).  As the Court finds that Garner's

7   "significant risk" standard now controls the Court's inquiry, Johnson cannot preclude Petitioner's ex

8   post facto claim.

9                    **(ii)  The Facts of *Johnson* are Distinguishable from Petitioner's**

10      Respondent's motion for reconsideration mischaracterizes the basis for the Magistrate

11  Judge's finding that Petitioner's claim is distinguishable from the claim raised in Johnson.[16]  In the

12  order setting the evidentiary hearing, the Magistrate Judge found that "[b]ecause Petitioner's factual

13  circumstance is distinguishable from the facts before the Ninth Circuit in Johnson, Johnson does not

14  preclude Petitioner's ex post facto claim." (Doc. 27 at 8).  In footnote four of the order setting the

15  evidentiary hearing, the Magistrate Judge explained that Petitioner's case is distinguishable from

16  Johnson because Petitioner has been granted parole on three separate occasions, whereas the

17  Petitioner in Johnson had only been granted parole once.  (Id.).  The Magistrate Judge reasoned that

18  Petitioner has established a much stronger prima facie showing that he has been harmed by article V,

19  section 8(b) than the petitioner in Johnson. (Id.).  The Court agrees.  Because Garner requires an as-

20  applied analysis, the factual differences between the instant case and the petitioner's case in Johnson

21  preclude the Court from holding that Johnson forecloses Petitioner's claim as a matter of law.  See

22  Seiler v. Brown, 2007 U.S. Dist. LEXIS 66412 *13 (noting Johnson but proceeding to evaluate

23  petitioner's claim under Garner); Heller v. Powers-Mendoza, 2007 U.S. Dist. LEXIS 27432 *2-3 &

24  n.1 (noting that post-Garner, petitioner's claim regarding article V, section 8(b) is a question of fact

25

26  [16] Respondent's motion for reconsideration states, "The magistrate judge distinguished *Johnson* stating that *Johnson* applied
    to a petitioner who had not been granted parole before the enactment of the constitutional amendment...like the petitioner in
27  *Johnson*, Thomas had not been granted parole before the enactment...thus, the magistrate judge erred in distinguishing
    *Johnson*." (Motion for Reconsideration at 1-2).  As discussed above, Respondent's statement reflects a misreading of the
28  Magistrate Judge's order.

1  that must be evaluated on case by case basis); see also Koch v. Daniels , 296 Fed.Appx. 621, 625-26

2  (10th Cir. 2008) (unpublished) (noting that although prior published Tenth Circuit opinions had

3  rejected ex post facto claims regarding Oklahoma parole statute at issue, prior cases "do not address

4  the specific circumstances of Koch's case" and thus proceeding to address petitioner's unique factual

5  circumstances).

6  **4. The Court May Consider Petitioner's Subsequent Parole History as Evidence**

7  Respondent's final contention does not implicate the propriety of holding an evidentiary

8  hearing.  Rather, Respondent's argument, even if correct, would merely limit the scope of the

9  evidence which may be presented at the evidentiary hearing.  Respondent contends that the

10  Magistrate Judge's order scheduling the evidentiary hearing is erroneous because it:

11        opens the door for [Petitioner] to introduce evidence and challenge any subsequent
          denials of parole after the 2004 decision by the Governor.  This is erroneous given
12        that a petitioner who files a petition for habeas corpus in federal court...must first
          exhaust state judicial remedies...Here, any claims [Petitioner] may have that arose
13        after the 2004 decision by the Governor are not before this court. More importantly,
          they may not be exhausted.

14
15  (Motion for Reconsideration at 10).  Respondent's argument reflects a fundamental

16  misunderstanding of the purpose of the Magistrate Judge's order.  Respondent is correct in its

17  assertion that any subsequent denial of parole to Petitioner cannot provide an independent basis for

18  habeas relief in this action; the instant petition challenges only the 2004 denial of parole to

19  Petitioner.  However, Petitioner's subsequent parole history is relevant evidence for the purpose of

20  determining whether article V, section 8(b), as applied to Petitioner, creates a significant risk of

21  prolonging his incarceration.  See Fed. R. Evid. 401.[17]  As discussed above, a federal habeas court

22  may consider evidence that was not before the state court.  Consideration of new evidence does not

23  implicate exhaustion principles unless the new evidence fundamentally alters the nature of the claim.

24  See, e.g., Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir 1999); see also Burnett, 432 F.3d at 1001

25  n.7 (noting the possibility that court could expand the record to include documents produced in a

26  separate state habeas proceeding, which occurred *after* the state's adjudication of the state habeas

27  petition being reviewed by the court under AEDPA standards).

28
_____

[17] The Federal Rules of Evidence apply to habeas proceedings under the AEDPA, McDowell v. Calderon, 107 F.3d 1351, 1368 (9th Cir.1997), subject to the limitations imposed by 28 U.S.C. § 2254(e), see Fed. R. Evid. 1101(e).

1  The evidence referred to by the Magistrate Judge does not fundamentally alter the nature of

2  Petitioner's claim.

3  **<u>Conclusion and Order</u>**

4  The Court finds that the petition is not moot, as the Court may remedy Petitioner's alleged

5  injury despite Petitioner's release on parole.  The Court also finds that the Magistrate Judge's order

6  scheduling an evidentiary hearing is neither clearly erroneous nor contrary to law.

7  Accordingly, it is HEREBY ORDERED that:

8  1) Respondent's request for dismissal on mootness grounds is DENIED;

9  2) Respondent's motion for reconsideration is DENIED;

10  3) The Magistrate Judge shall enter an order RESCHEDULING the evidentiary hearing in

11  this matter.

12

13  IT IS SO ORDERED.

14  **Dated:    June 17, 2009                      /s/ Lawrence J. O'Neill**
                                   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28