1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN THOMAS, | ) | 1:05-cv-01198-LJO-JMD-HC |
| | ) | |
| Petitioner, | ) | ORDER GRANTING PETITIONER'S |
| | ) | MOTION FOR DISCOVERY NUMERICAL |
| v. | ) | LIMITATIONS WAIVER |
| | ) | |
| JAMES A. YATES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Introduction**

Petitioner Brian Thomas is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court granted Petitioner leave to conduct discovery pursuant to Rule 6 of the Rules Governing Section 2254 cases on July 21, 2009, and Petitioner served discovery requests on Respondent shortly thereafter. (Doc. 38).

Respondent filed objections to Petitioner's discovery requests on August 14, 2009. (Doc. 45). Respondent objected to Petitioner's interrogatories on the basis that Petitioner exceeded the numerical limitation set forth by Federal Rule of Civil Procedure 33(a)(1). (Id.).

On August 31, 2009, Petitioner filed a motion for leave to file interrogatories in excess of the numerical limitation set forth by Federal Rule of Civil Procedure 33(a)(1). (Doc. 49). Respondent filed opposition to Petitioner's motion on September 25, 2009. (Doc. 58). Petitioner filed a reply to Respondent's opposition on September 29, 2009. (Doc. 59).

28

**<u>Discussion</u>**

Rule 33 of the Federal Rules of Civil Procedure limits the number of interrogatories a party may propound to twenty-five.  Parties must obtain leave of court before serving more than twenty-five interrogatories. Fed. R. Civ. P. 33(a)(1).  The parties dispute whether or not Petitioner's interrogatories exceed Rule 33's numerical limitation.  Respondent contends that many of the subparts contained in Petitioner's interrogatories should be counted as separate interrogatories under the standard articulated in *Kendal v. GES Exposition Services, Inc.*, 174 F.R.D. 684 (D. Nev. 1997) ("interrogatory sub-parts are to be counted as one interrogatory...if they are logically or factually subsumed within and necessarily related to the primary question").  (Opposition at 6).  Petitioner contends that he has not exceeded the twenty-five interrogatory limit but that, to the extent the Court's calculation reveals an excess of twenty-five interrogatories, Petitioner has demonstrated good cause to exceed Rule 33's numerical limitation.

**I.      Calculation of Petitioner's Interrogatories**

Parties cannot evade the presumptive limitation on interrogatories through the device of joining as 'subparts' questions that seek information about discrete separate subjects. Fed. R. Civ. P. 33 advisory committee's notes.  Subparts to an interrogatory should be counted as separate interrogatories unless "they are logically or factually subsumed within and necessarily related to the primary question." *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (quoting *Kendall*, 174 F.R.D. at 685 (D. Nev. 1997)).  As explained in *Kendall*:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question? Genuine subparts should not be counted as separate interrogatories. However, discrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related".

174 F.R.D. at 685.

Determining whether an interrogatory counts as a separate question requires a pragmatic approach. *Waterbury v. Scribner*, 2008 U.S. Dist. LEXIS 53142*6 (E.D. Cal. 2008). "[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate

interrogatory no matter how it is designated." *Id*. (Quoting *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C, 2005).

### A. Interrogatory No. 1

1. "When Governor Schwarzenegger issued his Indeterminate Sentence Parole Release Review, dated November 15, 2004, reversing the Board's grant of parole to Thomas, did he personally review materials provided him by the Board pursuant to California Penal Code 3041.2(a) and author a review?
    a. If not, please identify the person or persons who reviewed those materials and authored the Review, providing his, her, or their name(s) business address(es) business telephone number(s), and title(s).
    b. If so, please state:
        i. The date(s) of the review of the materials and the drafting of the Indeterminate Sentence Parole Release Review;
        ii. The amount of time spent in such review and drafting; and
        iii. The documents or other input reviewed

The main clause of Interrogatory No. 1 and subpart (a) seek an answer to the same fundamental inquiry: "who reviewed the materials provided by the Board pursuant to California Penal Code 3041.2(a) and authored a review?" The Court thus finds that subpart (a) of Interrogatory No. 1 is logically and factually subsumed within and necessarily related to the primary question. Subpart (b) is also logically and factually subsumed within and necessarily related to the primary question . As Petitioner points out, subpart (b) is akin to the example of a proper subpart provided in *Kendall*:

INTERROGATORY NO. 10: Was "KENDALL" given any warning/reprimand during her employment with Defendants? If so, identify each warning/reprimand by date of incident, brief description of the incident and person who administered the warning/reprimand by name, gender, position and address.

174 F.R.D. at 686. Subpart (b) seeks details concerning the primary inquiry of what actions the Governor took in reviewing Petitioner's parole grant. In other words, "all the questions are designed to describe" any review effected by the Governor. *Id*. Accordingly, the Court finds that Interrogatory No. 1 is properly calculated as a single interrogatory.[1]

///

///

---

[1] The Court notes that the response to Interrogatory No. 1 is likely the type of information that would be subject to mandatory disclosure under Federal Rule of Civil Procedure 26(a) in an ordinary civil proceeding.

**B. Interrogatory No. 2**

2. Please state the annual numbers of Board indeterminate sentence parole decisions finding a prisoner suitable for parole that were reviewed by the Governor from November 8, 1988 to the present pursuant to the authority conferred upon him by California Constitution article V, section 8(b), and California Penal Code § 3041.2.
    a. With respect to these gubernatorial reviews of Board indeterminate sentence parole decisions finding a prisoner suitable for parole, please state by year:
        i. The number the Governor affirmed or declined to review;
        ii. The number the Governor reversed; and
        iii. The number the Governor modified and the specific modification ordered in each instance.

Respondent contends that subpart (a) of Interrogatory No. 2 seeks discrete information and should be counted as a separate interrogatory. Respondent concedes that subpart (a) and its subparts may be counted as a single interrogatory.

The Court finds that subparts (a)(i), (a)(ii), and (a)(iii) are logically and factually subsumed within and necessarily related to the primary question.[2] As Respondent concedes, the independent inquiries posed in subpart (a) are sufficiently related to each other to be counted as a single inquiry. Respondent's concession in this regard is fatal to its proposed distinction between the primary inquiry posed by Interrogatory No. 2-- the total number of parole grants the governor reviewed-- and the details concerning such reviews. *See Kendall,* 174 F.R.D. at 686 (approving of subparts which sought details related to primary inquiry). The first portion of Interrogatory No. 2 does not seek information independent from that sought in subpart (a); this is demonstrated by the fact that the answer to the first portion of Interrogatory No. 2 is simply the sum of the answers to each of the inquiries contained in subpart (a).   Accordingly, the Court calculates Interrogatory No. 2 as a single interrogatory.

**C.  Interrogatory No. 3**

Respondent states "Interrogatory number three is similar to interrogatory number two, except that is seeks information regarding the annual number of Board decisions denying parole that were reviewed by the governor...for the same reasons argued with respect to interrogatory number two,

---

[2] Whether subpart (a)(iii) is logically and factually subsumed within and necessarily related to the primary question is questionable. Subpart (a)(iii) seeks information regarding the *substance* of Governor's modifications to various parole grants. In light of Respondent's concession that all three subparts of Interrogatory No. 2 are sufficiently related to be counted as a single interrogatory, however, the Court counts Interrogatory No. 2 as a single interrogatory.

1    this interrogatory should be counted as two separate interrogatories." (Opposition at 7).

2    Respondent's contention regarding Interrogatory No. 3 is incorrect for the same reasons discussed

3    above in section I(B).  Accordingly, the Court calculates Interrogatory No. 3 as a single interrogatory.

4    **D. Interrogatory No. 5**

5    5. Please state the annual numbers of indeterminate sentence life prisoners
     convicted of murder who were freed from California state prisons on parole release
6    from January 17, 1980 through November 7, 1988.
              a. With respect to each life prisoner who obtained such parole release,
7                 please state:
                        i. His or her commitment offense, i.e., whether first-degree
8                          murder or second-degree murder; and
                        ii. The number of years he or she was incarcerated.
9

10   Respondent contends that subpart (a) can "stand alone" and is thus separate and distinct from

11   the primary inquiry.  Respondent concedes that subparts (a)(i) and (a)(ii) are sufficiently related to be

12   counted as a single interrogatory.  (See Opposition at 7) (calculating Interrogatory No. 5 as two

13   interrogatories).

14   The Court finds that subpart (a) of Interrogatory No. 5 is  logically and factually subsumed

15   within and necessarily related to the primary question, as subpart (a) seeks details regarding the

16   response sought in the first clause of Interrogatory No. 5.  *See Kendall,* 174 F.R.D. at 686 (approving

17   of subparts which sought details related to primary inquiry).  Subpart (a) cannot be answered without

18   reference to the response to the inquiry contained in the first portion of Interrogatory No. 5.  The

19   primary inquiry posed by Interrogatory No. 5 is essentially "identify each indeterminate life prisoner

20   released on parole from January 17, 1980 through November 7, 1988," and the subparts seek details

21   regarding each instance in which a prisoner was released.   Accordingly, the Court calculates

22   Interrogatory No. 5 as a single interrogatory.

23   **E. Interrogatory No. 6**

24   Respondent states "Interrogatory number six seeks the same information as interrogatory

25   number five, except that it seeks information for the period of November 8, 1998 to present...for the

26   same reasons argued above with respect to interrogatory number five, this interrogatory should be

27   counted as two separate interrogatories." (Opposition at 8).  Respondent's contention regarding

28   Interrogatory No. 6 is incorrect for the same reasons discussed above in section I(D).

1   Accordingly, the Court calculated Interrogatory No. 6 as a single interrogatory.

2       **F. Interrogatory No. 7**

3       7. Is there a standardized package of individual case materials that is sent from
        the Board to the Governor pursuant to California Penal Code § 3041.2(a) so that the
4       latter can perform his duties under California Constitution article V, section 8(b)?
                a. If so, please identify each type of document included in this
5               standardized package (e.g., executive summary, memorandum
                decision, hearing panel decision, transcript of parole hearing, mental
6               health evaluation);
                b. If not, please explain how and by whom the decision is made
7               regarding which materials are to be sent to the Governor for his
                review.

8       Respondent notes correctly that subpart (a) is logically and factually subsumed within and

9   necessarily related to the primary question.  (Opposition at 8).  Respondent also argues correctly that

10  subpart (b) presents an independent line of inquiry and should be counted as a separate interrogatory.

11  Accordingly, the Court calculates Interrogatory No. 7 as two interrogatories.[3]

12      **G.  Interrogatory No. 8**

13      8. During the period January 17, 1980 through November 7, 1988, how many
14      times each year was an indeterminate sentence life prisoner whose commitment
        offense was murder found to be suitable for parole by a hearing panel of the Board?
15              a. Of that number, how many were released on parole without having to
                appear before a subsequent hearing panel?

16

17      Respondent correctly argues that subpart (a) presents an independent line of inquiry and

18  should be counted as a separate interrogatory.  Petitioner's inquiry regarding the number of prisoners

19  who did not have to appear before a subsequent hearing panel is not factually or logically subsumed

20  by the primary inquiry, which asks for the number of life prisoners found suitable for parole.

21  Accordingly, the Court calculates Interrogatory No. 8 as two interrogatories.

22      **H.  Interrogatory No. 9**

23      9. During the period November 7, 1988 through the present, how many times
24      each year was an indeterminate sentence life prisoner whose commitment offense was
        murder found to be suitable for parole by a hearing panel of the Board?
25              a. Of that number, how many were released on parole without having to
                appear before a subsequent hearing panel?

26

27

28  [3] The Court notes that the information sought in Interrogatory No. 7 and its subparts would likely be revealed by mandatory
    disclosures under Federal Rule of Civil Procedure 26(a) in an ordinary civil proceeding.

1    Respondent correctly argues that subpart (a) presents an independent line of inquiry and

2  should be counted as a separate interrogatory.  Petitioner's inquiry regarding the number of prisoners

3  who did not have to appear before a subsequent hearing panel is not factually or logically subsumed

4  by the primary inquiry, which asks for the number of life prisoners found suitable for parole.

5  Accordingly, the Court calculates Interrogatory No. 9 as two interrogatories.

6         **I. Interrogatory No. 10**

7         10. Does or did the Governor or the Board have a policy whereby the Governor
          exercises his review authority under California Constitution article V, section 8(b),
8         and California Penal Code § 3041.2 to review only Board grants of parole?
                   a. If yes, please identify all documents in which that policy is or was
9                  memorialized, including but not limited to communications with the
                   Board.
10                 b. If not, please identify each case since November 8, 1988 in which the
                   Governor reviewed a Board decision denying parole (excepting those
11                 cases in which review was requested by the prisoner).

12         Respondent contends that subparts (a) and (b) each present independent lines of inquiry.

13  As discussed in *Kendall,* where the primary question does not pertain to documentary evidence, a

14  subpart requesting identification of documents should generally be counted as a separate inquiry.

15  *See Kendall,* 174 F.R.D. at 686.  The Court calculates subpart (a) as a separate interrogatory.

16         The Court finds that subpart (b) of Interrogatory No. 10 is factually and logically subsumed

17  by the primary inquiry.  The primary inquiry posed by Interrogatory No. 10 seeks to ascertain how

18  the Governor exercises his review power under section 3041.2.   Subpart (b) seeks details concerning

19  the excise of the Governor's review power and only applies if the answer to the primary inquiry is

20  "no."  Accordingly, the Court calculates Interrogatory No. 10 as two interrogatories.

21         **J. Interrogatory No. 11**

22         The subpart to Interrogatory No. 11 asks Respondent to identify documents.  Where the

23  primary question does not pertain to documentary evidence, a subpart requesting identification of

24  documents should generally be counted as a separate inquiry.  *See Kendall,* 174 F.R.D. at 686.

25  Accordingly, the Court calculates Interrogatory No. 11 as two interrogatories.

26         **K. Interrogatory No. 13**

27         13. What criterion or criteria does the Governor use to determine whether an
          indeterminate sentence life prisoner who committed murder should be released on
28         parole?

1      a. If the Governor uses more than one criteria, does he accord each
       equal weight?
2      b. If not, please list the criteria in order of most to least importance to
       the Governor's review decision making.

3

4      Subparts (a) and (b) of Interrogatory No. 13 are not logically and factually subsumed within

5  and necessarily related to the primary question.  The primary inquiry posed by Interrogatory No. 13

6  asks *what* criteria the Governor evaluates, whereas subparts (a) and (b) ask *how* the Governor

7  evaluates such criteria.  Subparts (a) and (b) are properly considered as a single, separate

8  interrogatory.   The Court therefore calculates Interrogatory No. 13 as two interrogatories.

9      It is clear that Petitioner has exceeded Rule 33's numerical limitation.  Accordingly, the Court

10 now turns to the question of whether the Court should grant Petitioner leave to propound more than

11 twenty-five interrogatories on Respondent.

12 **II.    Petitioner's Request to Exceed Rule 33's Numerical Limitation**

13     A party must obtain leave of court to propound more than twenty-five interrogatories.  Fed.

14 R. Civ. P. 33(a)(1).  Rule 33(a)(1) provides:

15     Unless otherwise stipulated or ordered by the court, a party may serve on any other
       party no more than 25 written interrogatories, including all discrete subparts. Leave to
16     serve additional interrogatories may be granted to the extent consistent with Rule
       26(b)(2).

17

18 Federal Rule of Civil Procedure 26(b)(2) provides, in relevant part:

19     *(*A) When Permitted. By order, the court may alter the limits in these rules on the
       number of depositions and interrogatories or on the length of depositions under Rule
20     30. By order or local rule, the court may also limit the number of requests under Rule
       36...
21     (C) When Required. On motion or on its own, the court must limit the frequency or
       extent of discovery otherwise allowed by these rules or by local rule if it determines
22     that:
       (i) the discovery sought is unreasonably cumulative or duplicative, or can be
23     obtained from some other source that is more convenient, less burdensome, or less
       expensive;
24     (ii) the party seeking discovery has had ample opportunity to obtain the
       information by discovery in the action; or
25     (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
       considering the needs of the case, the amount in controversy, the parties' resources,
26     the importance of the issues at stake in the action, and the importance of the discovery
       in resolving the issues.

27

28 Several district courts have held that the party requesting additional interrogatories must make a

U.S. District Court

E. D. California                                           8

1    "particularized showing" as to why additional discovery is necessary.  *See, e.g., Archer Daniels*

2    *Midland Co. v. Aon Risk Services, Inc. of Minn.*, 187 F.R.D. 578, 586 (D. Min. 1999).

3         The Court finds that Petitioner has demonstrated good cause for propounding more than

4    twenty-five interrogatories.  Federal law places substantial limits on the ability of habeas petitioners

5    to obtain discovery, *see, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (discussing good cause

6    requirement), and federal habeas petitioners are not entitled to the benefits provided by the

7    mandatory disclosure provisions of Federal Rule of Civil Procedure Rule 26(a), Fed. R. Civ. P.

8    26(a)(1)(B)(iii).  Petitioner points out, correctly, that the inapplicability of Rule 26(a) to habeas

9    proceedings requires Petitioner to rely on interrogatories to obtain basic information that would be

10   disclosed as a matter of course in ordinary civil proceedings.  *See* Fed. R. Civ. P. 26(a)(1)(i)-(ii)

11   (requiring disclosure to opposing parties of information such as the names and addresses of

12   individuals likely to have discoverable information and copies or descriptions of physical evidence

13   that will be used to support claims or defenses).  The Advisory Committee's notes on the 1993

14   amendments to Rule 33(a) provide, in part  "[b]ecause Rule 26(a)(1)-(3) requires disclosure of much

15   of the information previously obtained by this form of discovery, there should be less occasion to use

16   it."  Fed. R. Civ. P. 33 advisory committee's notes.  The Advisory Committee's statement that there

17   should be less occasion to use interrogatories due to Rule 26(a) does not apply to the instant action.

18   *See* Fed. R. Civ. P. 26(a)(1)(B)(iii).

19        Several of Petitioner's interrogatories seek basic information that would ordinarily be

20   disclosed under Rule 26(a).  Further, several of Petitioner's interrogatories seek numerical data that

21   may provide important evidence in support of Petitioner's claim.  *See Garner v. Jones,* 529 U.S.

22   244, 255 (2000) (discussing relevancy of statistical evidence regarding implementation of a

23   retroactive parole law).  As discussed by the Supreme Court in *Garner*, statistical data may be

24   necessary to demonstrate an ex post facto violation where the challenged parole statute is facially

25   neutral.  *Id.*  Accordingly, the Court finds that Petitioner has demonstrated a particularized need to

26   exceed Rule 33's numerical limitation.

27   ///

28   ///

Although Petitioner bares the burden of establishing cause to exceed Rule 33's limitations, it is significant that Respondent does not contend that Petitioner's interrogatory requests run afoul of the considerations discussed in Rule 26(b)(2).  It does not appear to the Court, and Respondent does not contend, that the discovery sought is unreasonably cumulative or duplicative; that the burden or expense of the proposed discovery outweighs its likely benefit; or that Petitioner has had an ample opportunity to obtain the information sought in Petitioner's interrogatories.  Given the important liberty interest that is at stake in this action, Petitioner's good faith effort to comply with Rule 33, the need for numerical data given the unique nature of Petitioner's claim, and the inability of Petitioner to obtain basic information pursuant to Rule 26(a), the Court finds that Petitioner has demonstrated a particularized need to exceed the twenty-five interrogatory limit imposed by Rule 33.  Petitioner's request for leave to exceed Rule 33's twenty-five interrogatory limit is GRANTED, and Petitioner may serve Respondent with each of the interrogatories set forth in Petitioner's motion for leave to conduct discovery.  Petitioner may not serve additional interrogatories without the Court's prior approval or Respondent's consent.  As the Court has not yet received the parties' joint statement, the Court expresses no opinion on the propriety of any of Petitioner's interrogatories at this time.

IT IS SO ORDERED.

**Dated:    October 8, 2009**              **/s/ John M. Dixon**
                                        UNITED STATES MAGISTRATE JUDGE