# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS, ) | 1:05-cv-01198-LJO-JMD-HC |
| ) | |
| Petitioner, ) | ORDER GRANTING IN PART AND |
| ) | DENYING IN PART PETITIONER'S |
| v. ) | MOTION TO COMPEL DISCOVERY |
| ) | RESPONSES |
| MATTHEW CATE, ) | |
| ) | ORDER DIRECTING CLERK OF COURT |
| Respondent. ) | TO SUBSTITUTE RESPONDENT |
| ) | |

### Procedural Background

Petitioner Brian Thomas ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On March 19, 2009, the Court scheduled an evidentiary hearing in this matter in order to permit Petitioner to present evidence that article V, section 8(b) of the California Constitution created a significant risk of prolonging Petitioner's incarceration and therefore violated Petitioner's rights under the Ex Post Facto Clause of the United States Constitution. (Doc. 27).[1] On July 10, 2009, Petitioner filed a request for leave to propound discovery pursuant to Rule 6 of the Rules Governing Section 2254 Cases. (Doc. 36).

The Court granted Petitioner's request for leave to propound discovery on July 21, 2009.

---

[1] Respondent filed a motion for reconsideration of the order scheduling the evidentiary hearing on April 2, 2009. (Doc. 28). The District Judge denied Respondent's motion for reconsideration on June 17, 2009. (Doc. 33).

(Doc. 38).  On August 7, 2009, the District Judge denied Respondent's[2] motion for reconsideration of the order granting Petitioner leave to propound discovery.  (Doc. 44).

Petitioner filed a motion to compel discovery on August 31, 2009.  (Doc. 48).  On October 19, 2009, the parties filed a Joint Statement regarding the parties' outstanding discovery disputes. (Doc. 19).  For reasons explained below, Petitioner's motion to compel is granted in part and denied in part.

### Discussion

## I.    Introduction

The Ex Post Facto Clause of the United States Constitution prohibits the States from enacting a law which, by retroactive operation, increases the punishment for a crime after its commission. U.S. Const., Art. I § 10; *E.g. Garner v. Jones*, 529 U.S. 244, 249-50 (2000) (citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).  In the parole context, a prisoner may demonstrate an ex post facto violation by establishing that, as applied to him, a retroactive parole law "creates a significant risk of prolonging [his] incarceration."  *Garner*, 529 U.S. at 250 (citing *Lynce v. Mathis*, 519 U.S. 433, 445-46 (1925)); *Brown v. Palmateer*, 379 F.3d 1089, 1095 (9th Cir. 2004).  In *Garner*, the Supreme Court established that whether a retroactive parole law violates the Ex Post Facto Clause depends on the manner in which the law is applied to the prisoner challenging its application. *Garner*, 529 U.S. at 256-57.

In addition to imposing a new, substantive standard for evaluating ex post facto claims in the parole context, the Supreme Court's decision in *Garner* revealed the importance of affording a prisoner the opportunity to obtain discovery.  *Id.* at 257.  Although the Supreme Court noted that the proper scope of discovery lies within the discretion of the district courts, it identified two types of information that are generally relevant to ex post facto inquiries: 1) internal policies regarding implementation of the challenged statute by the agency charged with implementing the statute, and 2) data reflecting the real-world operation of the challenged statute.  *Id.* at 255-57.  Much of

---

[2] Where the petitioner is on probation or parole, the proper respondent for a habeas corpus petition is the petitioner's probation or parole officer and the official in charge of the parole or probation agency or the state correctional agency. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th cir.1996); Rule 2(b), 28 U.S.C. foll. § 2254.  Thus, the proper respondent in this case is Matthew Cate, the Secretary of the California Department of Corrections and Rehabilitation.

Petitioner's requested discovery falls within the two categories of information discussed by the Supreme Court's decision in *Garner*: the Governor's practices and policies regarding his implementation of article V, section 8(b), and the real-world practical effect of article V, section 8(b) on parole trends in California.   Because the Governor's internal practices and policies are relevant to Petitioner's claim for relief, discovery in this action raises important privilege issues that must be decided with care.

### A. The Deliberative Process Privilege

As this case is before the court based on a federal question, federal privilege law applies. *NLRB v. North Bay Plumbing Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996) (citing Fed.R.Evid. 501). "Federal common law recognizes the deliberative process privilege." *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp 2d 1118, 1120 (N.D.Cal. 2003).  The deliberative process privilege exempts from discovery information reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. *FTC v. Warner Comm's., Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The deliberative process privilege is designed to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny. *Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (discussing Exemption 5 of the Freedom of Information Act, 5. U.S.C. § 552(b)(5)).[3]  Information is protected by the deliberative process privilege if it predates the governmental decision and is "deliberative" in nature. *Warner Comm's.*, 742 F.2d at 1161.  The key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. *Carter v. United States DOC*, 307 F.3d 1084, 1090 (9th Cir. 2002).

The burden of establishing application of the deliberative process privilege is on the party asserting it. *E.g. North Pacifica*, 274 F.Supp. at 1121.  Assertion of the deliberative process

---

[3] Many courts have noted that 5 U.S.C. § 552(b)(5) embodies the deliberative process privilege. *E.g. Carter v. United States DOC*, 307 F.3d 1084, 1088-89 (9th Cir. 2002); *Harris v. City of Philadelphia*, 1995 U.S. Dist. LEXIS 7908 *16 n. 7 (E.D. Pa. 1995) ("[t]here are 'no functional differences in the applicable principles for an analysis of the [deliberative process] privilege under the [FOIA] or the federal common law'").

privilege requires: (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official;(3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege; and (4) a showing that the material for which the privilege is asserted has been kept confidential. *Coleman v. Schwarzenegger*, 2008 U.S. Dist. LEXIS 111653*19 (E.D. Cal. 2009) (citing *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) and *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988)). While the party invoking the deliberative process privilege must establish that material subject to its privilege claim contains personal opinions of the type that would chill deliberations, the invoking party does not bear the burden of showing each individual document would *actually* chill deliberations. *See Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d at 866, 869 (D.C. Cir. 1980).

The deliberative process privilege is a qualified privilege, and a litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. *E.g. Warner Comm's.*, 742 F.2d at 1161. Among the factors to be considered in determining whether to sustain a deliberative process privilege claim are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id.*; *accord Hinckley v. United States,* 140 F.3d 277, 285 (D.C. Cir. 1998) (employing similar balancing approach).[4]

### 1. The Parties' Contentions

Petitioner contends that the deliberative process privilege does not apply at all to Petitioner's claim because the Governor's decision making process is itself at issue in this action. (Joint

---

[4] The court may also take into account society's interest in accurate judicial fact finding, *North Pacifica*, 274 F.Supp.2d at 1122, as well as the seriousness of the litigation and the issues involved, *Hinckley,* 140 F.3d at 285; *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D.Cal. 1989). Both of these factors weigh heavily in Petitioner's favor. *See Young v. City and County of Honolulu*, 2008 WL 2676365,*6 (D. Haw. 2008) ("The interest in accurate fact finding always weighs in favor of disclosure"); *Harris v. Nelson*, 394 U.S. 286, 292 (1969) ("There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus...the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves").

Statement at 28).[5]  The Governor and Respondent contend that even where the government's decision-making process is at issue, the privilege prohibits discovery of deliberative materials unless the party seeking discovery makes "a clear showing of misconduct or wrongdoing." (Joint Statement at 35).  The Court cannot fully accept either position.

### a. Petitioner's Contention

A number of courts have held that the deliberative process privilege does not apply in actions where the government's decision making is central to the plaintiff's case. *E.g. In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424-25 (D.C. Cir. 1998); *United States v. Lake County Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005) (collecting cases).  As the Court of Appeals for the District of Columbia explained in *In re Subpoena*:

> The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. *See, e.g., In re Subpoena Served Upon the Comptroller of the Currency*, 296 U.S. App. D.C. 263, 967 F.2d 630 (D.C. Cir. 1992) (shareholders sought Comptroller's bank examination reports to prove fraud charges against corporation); *Singer Sewing Machine Co. v. NLRB*, 329 F.2d 200 (4th Cir. 1964) (petitioner wanted deliberative materials to establish a defense to an unfair labor practice charge). If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield.  For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination. The Supreme Court struggled in *Crawford-El* and *Webster* with governmental claims that discovery in such a proceeding should be limited, but no one in any of these cases ever had the temerity to suggest that the privilege applied. The argument is absent in these cases because if either the Constitution or a statute makes the nature of governmental officials' deliberations the issue, the privilege is a nonsequitur. The central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44 L. Ed. 2d 29, 95 S. Ct. 1504 (1975).

*In re Subpoena,* 145 F.3d at1424-25.  Here, the Constitution puts the nature of the Governor's deliberations at issue in this case, as the Supreme Court has established that ex post facto analysis of facially neutral parole laws requires courts to inquire the manner in which parole authorities exercise their discretion.  *Garner*, 529 U.S. at 256-57 (proving ex post facto violation requires prisoner to adduce "evidence drawn from the rule's practical implementation by the agency charged with

---

[5] Page number references for documents available on the Court's CM/ECF system correspond to the PDF pagination, not the pagination contained on the original hard-copy documents.

exercising discretion"). Pursuant to *Garner*, internal deliberations which reveal the manner in which a retroactive parole law was applied to a prisoner may provide significant – if not essential– evidence of an ex post facto violation. *See Mickens-Thomas v. Vaughn*, 321 F.3d 374, 389 (3rd Cir. 2003) (finding of ex post facto violation based on analysis of "the Board's own internal notes" and "deliberations"); *see also Dyer v. Bowlen*, 465 F.3d 280, 288 (6th Cir. 2006) (remanding case to permit discovery on issue of "how the parole board has actually exercised its discretion"). Because the manner in which the Governor exercised his discretion is *the issue* underlying Petitioner's claim for relief, there are sound reasons why the deliberative process privilege should not apply at all in this action. *See id.* (noting that key issue underlying Petitioner's ex post facto claim was "the effect of the [retroactive] provision on [prisoner's] parole eligibility *in the minds of the parole board"*) (emphasis added); *see also Lake County Bd. of Comm'rs*, 233 F.R.D. at 526 (holding that "dominant view is that the ...the deliberative process privilege does not apply when the government's intent is at issue").

Although this Court finds the reasoning set forth in cases such as *In re Subpeona* and *Lake County* highly persuasive, given the lack of binding Ninth Circuit authority on the matter, the Court adopts the balancing approach set forth in *Warner Comm's.* with respect to each individual discovery request, keeping in mind that the fact that the decision making process is at issue in this case weighs heavily against Respondent's assertion of privilege.

### b. The Governor's Position[6]

The Governor cites *Franklin Sav. Ass'n. v. Ryan*, 922 F.2d 209, 211-12 (4th Cir. 1991) in support of his position that Petitioner must make a clear showing of wrongdoing or misconduct in order to overcome the deliberative process privilege.[7] (Joint Statement at 35). In *Franklin,* the plaintiff challenged a decision made by the Director of the Office of Thrift Savings on the basis that the decision was arbitrary and capricious. *Id.* at 209. Plaintiff sought to expand the court's inquiry

---

[6] Throughout the Joint Statement, Respondent and the Governor lodge joint objections. Rejection of one party's objection shall be deemed a rejection of the other party's objection as well, unless otherwise noted.

[7] The Governor advances an identical argument with respect to the mental process privilege. For the same reasons discussed in this section, the Governor's position is incorrect.

beyond the administrative record, contending that the record was incomplete because it did not contain confidential agency memoranda considered by the agency during its deliberations. In holding that the plaintiff was not entitled to discovery of the agency's deliberative material, the Fourth Circuit held that deliberative materials are discoverable only "where there is a clear showing of misconduct or wrongdoing." *Id*. at 212. The *Franklin* Court relied on "hornbook administrative law" as stated in *Feller v. Board of Education*, 583 F. Supp. 1526, 1528 (D.Conn. 1984), to support its conclusion that:

> [i]n reviewing a decision of an administrative agency, it is not the proper function of the court to probe the mental processes of the agency or its members. . . . Such probing should ordinarily be avoided, and there must be a *strong showing* of bad faith or improper behavior before such inquiry may be made.

*Id*. at 212 (emphasis in original). Examination of the precedent underlying the rule expressed in *Franklin* reveals that the rule is inapplicable to Petitioner in the context of the instant action.

The *Feller* Court relied on *United States v. Morgan*, 313 U.S. 409 (1941) and *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) as authority for the proposition that a strong showing of bad faith is a prerequisite to overcoming the mental process privilege. *Feller*, 583 F.Supp. at 1528. *Morgan* is the seminal case which spawned the deliberative process and mental process privileges. In *Morgan*, the Supreme Court held that where an administrative proceeding "has a quality resembling that of a judicial proceeding," it is not the function of the courts to "probe the mental processes" of the administrative body. 313 U.S. at 422. The Supreme Court stated that probing the mental processes of a judge would be "destructive of judicial responsibility" and reasoned that "just as a judge cannot be subjected to such a scrutiny...so the integrity of the administrative process must be equally respected." *Id*. (citations omitted). The notion that courts must afford agencies "appropriate independence" and respect underpinned the Supreme Court's holding in *Morgan*. *See id.* The *Morgan* Court did not discuss any exceptions to the general prohibition against probing the mental processes of administrative actors. *See id.*

In *Overton Park*, the Supreme Court qualified the rule set forth in *Morgan*, holding that although "inquiry into the mental processes of administrative decisionmakers is *usually* to be avoided," in some instances, "it may be that the only way there can be effective judicial review is by

examining the decisionmakers themselves." 401 U.S. at 420 (emphasis added). The High Court stated:

> Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. *United States v. Morgan*, 313 U.S. 409, 422 (1941). And *where there are administrative findings that were made at the same time as the decision*, as was the case in Morgan, there must be a strong showing of bad faith or improper behavior before such inquiry may be made. But here there are no such formal findings and it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves. *See Shaughnessy v. Accardi*, 349 U.S. 280 (1955).

*Overton Park*, 401 U.S. at 420 (emphasis added). Read in the context of the Supreme Court's holding in *Overton Park*, the rule stated in *Franklin* is not as broad as the Governor urges. A "strong showing of bad faith or improper behavior" is only required where a party challenges the substantive merits of an administrative decision that is supported by contemporaneous formal findings; this rule appears to be based on the general prohibition against consideration of extra-record evidence during judicial review of administrative action. *See id*. at 417 (noting that narrow standard of review applies to judicial review of agency action and that "court is not empowered to substitute its judgment for that of the agency").

The general rule prohibiting courts from receiving extra-record evidence when reviewing agency action is based on the presumption of regularity afforded to agency decisions, coupled with the principal that a reviewing court should not usurp the agency's function. *See, e.g., id; see also Hyatt v. Doll*, F.3d 1246, 1267-68 (Fed. Cir. 2009) (discussing general principals applicable to judicial review of agency decisions); *United States v. Hooker Chems. & Plastics Corp*., 123 F.R.D. 3, 43 (W.D. N.Y. 1988) (administrative law doctrines defining the scope of judicial review of agency actions are "tied in important ways to the delegation of authority inherent in the creation of administrative agencies"); *Taiwan Semiconductor Indus. Ass'n v. United States*, 24 C.I.T. 220, 224 (Ct. Int'l. Trade 2000) (stating that rule expressed in *Morgan* is consistent with presumption of regularity and noting that rule is limited to instances in which the agency has made formal findings). When a reviewing court considers evidence relevant to the substantive merits of the agency action that was not included in the administrative record, it inevitably leads the reviewing court to substitute its judgment for that of the agency. *Asarco, Inc. v. U. S. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980).

Accordingly, as a general matter, courts will not receive extra-record evidence related to the agencies deliberative process absent a strong showing of bad faith. *E.g. Taiwan Semiconductor*, 24 C.I.T. at 224.

Petitioner's ex post facto claim does not entail a direct challenge to the substantive merits of the Governor's decision–i.e., the Governor's determination that Petitioner posed an unreasonable risk of danger.[8] Here, as in *Dyer*, the purpose of taking extra-record evidence is to assess the quantum of risk entailed by a retroactive statute. 465 F.3d at 288-89 (discussing reason for remand). Because Petitioner's ex post facto claim does not challenge the substantive merits of the Governor's decision, the concerns underlying the rule set forth in *Overton Park* and applied in *Franklin* are not implicated. *See Asarco,* 616 F.2d at 1160 (where evidence is not introduced for the purpose of challenging "substantive merits" of agency action, consideration of such evidence raises "fundamentally different concerns" than those traditionally implicated by the introduction of extra-record evidence); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954) (distinguishing habeas petitioner's prejudgment claim from typical challenge to substantive merits of agency action and remanding the case for development of extra-record evidence regarding agency deliberations). The rule discussed in *Franklin* is thus inapplicable in the context of Petitioner's ex post facto claim.

**2. Application of the Deliberative Process Privilege in this Action**

The Court concludes that where a litigant seeks to probe the mental processes of an administrative official in connection with a claim for judicial review that does not challenge the substantive merits of the administrative decision, the litigant must make a prima facie showing sufficient to call the decision-making process into issue. *See, e.g., Franklin Sav. Ass'n*, 922 F.2d at 212 n.3 (citing *Singer Sewing Machine Co. v. NLRB*, 329 F.2d 200, 208 (4th Cir. 1964) for proposition that only a *prima facie* showing is required); *Lake County*, 233 F.R.D. at 529 (same) (citing *Alexander v. FBI*, 186 F.R.D. 154, 165 (D.D.C. 1999)); *see also In re Sealed Case,* 121 F.3d 729, 746 (D.C. Cir. 1997) ("the privilege disappears altogether when there is *any* reason to believe

---

[8] By contrast, Petitioner's due process claim *does* challenge the merits of the Governors determination that Petitioner posed an unreasonable risk of danger.

government misconduct occurred") (emphasis added); *Shaughnessy*, 347 U.S. at 268 (habeas petitioner's allegation of prejudice, based on double hearsay statement offered by petitioner's attorney, held sufficient to permit introduction of evidence of agency's internal deliberations); *Denver First Church of the Nazarene v. Cherry Hill Village*, 2006 U.S. Dist. LEXIS 49483*20 (D. Col. 2006) ("as long as Plaintiff can set forth any evidence, including circumstantial evidence, of illegal motive, Plaintiff can overcome Defendants' claim for deliberative process privilege").  Once a litigant makes a prima facie showing sufficient to call the decision-making process into issue, the litigant may be entitled to discovery of information that reveals the deliberative and mental processes of the administrative actor, subject to the balance of interests between the parties. *E.g. Warner Comm's., Inc.,* 742 F.2d at1161.

Petitioner has made the requisite prima facie showing necessary to call the Governor's decision making process into issue in this action.  (*See* Doc. 33 at 8) (discussing evidence Petitioner has presented which suggests possibility of entitlement to relief).  Petitioner alleges that the Governor implements his review authority under article V, section 8(b) in a manner that ensures "almost certain gubernatorial reversal" of parole grants. (*See* Pet. at 33-35; 28-29).  If Petitioner can prove that the Governor was unfaithful to his statutory commands in reversing Petitioner's parole grant, or that the Governor exercised his review authority over Petitioner in a way that created a significant risk of prolonging Petitioner's incarceration, Petitioner will be entitled to relief.  Accordingly, the Court must evaluate Petitioner's discovery requests and the Governor's claims of privilege within the balancing framework set forth in *Warner Comm's.*.

### B.  The Mental Process Privilege

The mental process privilege is a corollary to the deliberative process privilege that "protects uncommunicated motivations for a policy or decision." *E.g. North Pacifica*, 274 F.Supp.2d at 1122; *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C. 1966).[9]  The "mental process privilege is 'inextricably intertwined' with the deliberative process privilege." *Lake County*,

---

[9]  The mental process privilege is not well defined.  As one jurist aptly noted, "the case law [concerning the scope of the mental process privilege] is confusing–confused." *Hooker Chems*, 123 F.R.D. at 18.  Most courts that have addressed the mental process privilege and deliberate process privilege conflate the two issues. *Id*. at 95.

233 F.R.D. at 526.  Like the deliberative process privilege, the mental process privilege must be raised with particularity, and the party asserting the privilege bears the burden of establishing its applicability.  *See Tenneco Oil Co. v. Department of Energy*, 475 F.Supp. 299, 319 (D. Del. 1979); *see also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. at 327 n.33.

Whether the mental process privilege affords broader protection than the deliberative process privilege is unsettled.  *Compare Hooker Chems.*, 123 F.R.D. at 42 ("If the justification for the existence of the mental processes privilege is that it complements the deliberative privilege, its scope and application is coextensive with the scope and application of that privilege") *with North Pacifica*, 274 F.Supp.2d at 1122-23 (noting that because "the level of intrusiveness entailed when a person's mental processes are probed may be greater than when objective indicia of deliberation...are disclosed...the two privileges may be subject to different outcomes depending on the circumstances").  It is clear, however, that like the deliberative process privilege, the mental process privilege is a qualified one that may be overcome by a litigant.  *E.g. id.* at 1122 (citing *Overton Park*, 401 U.S. at 420 and *Village of Arlington Heights v. Metropolitan Hous. Dev.*, 429 U.S. 252, 268 (1977)).

The Governor contends that, in order to overcome the mental process privilege, Petitioner must demonstrate a "strong showing of bad faith or improper behavior."  (Joint Statement at 36) (citing *Overton Park*, 401 U.S. at 420).  As discussed above, the rule urged by the Governor is inapplicable in the context of the instant action because Petitioner does not challenge the substantive merits of an agency decision.  Accordingly, the Court must evaluate each of the Governor's objections in light of the balancing approach set forth in *Warner Comm's.*.

## II.  Interrogatories

## Interrogatory No. 1

When Governor Schwarzenegger issued his Indeterminate Sentence Parole Release Review, dated November 15, 2004, reversing the Board's grant of parole to Thomas, did he personally review materials provided him by the Board pursuant to California Penal Code 3041.2(a) and author a review?

a. If not, please identify the person or persons who reviewed those materials

and authored the Review, providing his, her, or their name(s) business address(es) business telephone number(s), and title(s).

b. If so, please state:

i. The date(s) of the review of the materials and the drafting of the Indeterminate Sentence Parole Release Review;

ii. The amount of time spent in such review and drafting; and

iii. The documents or other input reviewed

**A. Governor's Response to Interrogatory No. 1**

The Governor objects to Interrogatory No. 1 based on the deliberative process privilege and mental process privilege.[10]  (Joint Statement at 13).

**1.  Deliberative Process Privilege**

Initially, the Court notes that the applicability of the deliberative process privilege to Interrogatory No. 1 is doubtful, as it does not seek to discover the substance of any deliberative communications.  *See, e.g., United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993) ("deliberative process privilege protects *communications* that are part of the decision-making process of a governmental agency") (emphasis added); *Hooker Chems.*, 123 F.R.D. at 43 (same); *In re Franklin,* 478 F. Supp. 577, 581 (E.D.N.Y. 1979) (privilege "only protects expressions of opinions or recommendations"); *North Pacifica*, 724 F.Supp.2d at 1121 ("government can withhold documents or prevent testimony that "reflect[s] advisory opinions, recommendations and deliberations"); *but see Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (9th Cir. 1991) (privilege protects testimony regarding "the manner and extent of [entity's] study of the record").[11] Interrogatory No.1 does not seek to discover mental impressions or opinions expressed during the deliberative process.  Interrogatory No. 1 merely seeks discovery of the identity of the person or persons who reviewed the materials provided by the parole board, how much time was spent on such review, and the date on which such review occurred.  The factual information sought in

---

[10] In addition to invoking the "mental process privilege"and "deliberative process privilege," the Governor mentions a "quasi-judicial privilege."  It appears that the Governor employs the terms "quasi-judicial privilege" and "mental process privilege" synonymously.

[11] In *Ryan*, the Court did not specify what privilege it was applying but referenced the term "mental processes."  *Ryan* is one of the many cases which conflates the two distinct privileges that have evolved from *Morgan* and its progeny.

Interrogatory No. 1 is not "deliberative," as responses to Interrogatory No. 1 would not expose the decision making process in such a way as to discourage candid discussion during parole considerations. *See Carter*, 307 F.3d at 1090 (key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion); *see also Public Citizen, Inc, v. OMB*, 569 F.3d 434, 443 (D.C. Cir. 2009) (evidence deemed deliberative "if it reflects the give-and-take of the consultative process").

Alternatively, assuming *arguendo* that the privilege does apply to the information sought in Interrogatory No. 1, the Court finds that Petitioner's interest in accurate fact-finding outweighs the government's interest in keeping the information classified. The deliberative process privilege is a qualified privilege, and a litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. *E.g. Warner Comm's.,* 742 F.2d at 1161. Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id*. Each of the factors discussed in *Warner Comm's.* weighs against upholding the Governor's claim of privilege.

### a. Relevance

The information sought in Interrogatory No. 1 is clearly relevant to assessing whether the Governor's review of Petitioner's parole grant was carried out in accordance with the Governor's statutory commands, which is an important factual question in this action. (*See* Doc. 27, Order Setting Evidentiary Hearing at 5 n.2 ). Article V, section 8(b) of the California Constitution states that the Governor "may only affirm, modify, or reverse the decision of the parole authority on the basis of the same factors which the parole authority is required to consider." "The Governor, in reviewing parole board's decision, is to apply the same factors that the [parole] board," *In re Rosenkrantz* 29 Cal.4th 616, 640 (Cal. 2002), and the Governor may only reverse a board's grant of

parole if some evidence demonstrates on the record indicates that the prisoner "will pose an unreasonable risk of danger to society if released from prison," CAL. CODE. REGS. TIT 15, § 2402(a) (2008); *In Re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal. 2008). If responses to Interrogatory No. 1 reveal that neither the Governor nor anyone on his staff reviewed the materials provided by the parole board, or that the time spent reviewing such information was plainly insufficient to permit a complete review, such evidence could support Petitioner's contention that application of article V, section 8(b) to him created a significant risk of prolonging his incarceration because the Governor's review of his parole grant was substantively different than the parole board's review.

The Governor's purported distinction between "the manner in which the Governor exercises his discretion" and "how the Governor [made] his decision" in Petitioner's specific case is more semantic than substantive. (Joint Statement at 35). Ascertaining how a retroactive statute was implemented in a particular case is the essence of an as-applied analysis under the Ex Post Facto Clause. *See Garner,* 529 U.S. at 255; *see also Vaughn*, 321 F.3d at 389 (examining parole board's deliberations in prisoner's specific case in order to adjudicate ex post facto claim). The general manner in which the Governor exercises his parole review authority is relevant to the ultimate issue in this action; the manner in which the Governor exercised his authority in Petitioner's particular case *is* the ultimate issue in this action. Even if the Governor generally complies with his statutory commands in implementing article V, section 8(b), if he did not do so in Petitioner's case, Petitioner may be entitled to relief. Accordingly, the Governor's contention that the information sought in Interrogatory No. 1 is irrelevant lacks merit.

The Governor is also incorrect in his assertion that Petitioner has not alleged improper purpose or intent. (Joint Statement at 36). Petitioner alleges that the Governor implements his review in a manner that ensures "almost certain gubernatorial reversal" of parole grants. (*See* Pet. at 33-35; 28-29). If Petitioner can prove that the Governor is unfaithful to his statutory commands, or that the Governor otherwise exercises his review authority in a manner that creates a significant risk of prolonging Petitioner's incarceration, Petitioner will be entitled to relief. Petitioner has already

presented some evidence that the Governor's review is implemented in a way that may violate the ex post facto clause. (*See* Doc. 33 at 8) (discussing evidence Petitioner has presented which suggests possibility of entitlement to relief). Petitioner has put the Governor's decision making process at issue in this action, and thus the information sought in Interrogatory No. 1 is relevant. The fact that Interrogatory No. 1 seeks to discover information relevant to an important issue in this action weighs heavily against Respondent's assertion of the deliberative process privilege. *See, e.g., In re Subpeona*, 145 F.3d at 1424; *accord L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 52060*15 n.7 (N.D. Cal. 2007) (citing *In re Subpeona* with approval); *see also United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989) (rejecting privilege claim were deliberative process was a central issue in the case) (citing *United States v. Board of Education*, 610 F.Supp. 695, 700 (N.D. Ill.1985); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 642 (S.D.N.Y. 1991) (rejecting privilege claim because "statutory mandate to take certain considerations into account in its deliberations" was directly at issue in the case); *Cal. Native Plant Soc'y v. United States EPA*, 251 F.R.D. 408, 415 (N.D. Cal. 2008) (rejecting privilege where decision making process was at issue).

### b. Availability of Other Evidence

The Governor contends that "there is other evidence which clearly informs Petitioner of the reasons for the 2004 decision, and the basis for the Governor's decision." (Joint Statement at 35). The evidence the Governor alludes to– the Governor's written decision reversing Petitioner's grant of parole– does not reveal the information sought in Interrogatory No. 1. Interrogatory No. 1 seeks to discover logistical information concerning the process employed in reviewing Petitioner's parole grant; this information is distinct from the Governor's stated reasons for reversing Petitioner's parole grant. The fact that no other evidence concerning the information sought in Interrogatory No. 2 is available to Petitioner weighs against Respondent's assertion of the deliberative process privilege. *See Warner Comm's.,* 742 F.2d at1161.

### c. Government's Role in the Litigation

The fact that a governmental entity's action is the focal point of litigation weighs against

upholding the deliberative process privilege. *See, e.g., Sierra Club v. Kempthorne*, 488 F. Supp. 2d 1188, 1193 (S.D. Ala. 2007); *see also Agresta v. Goode*, 1993 U.S. Dist. LEXIS 1858*8 (E.D. Pa. 1993) (fact that Government was a defendant alleged of wrongdoing weighed against assertion of the privilege); *Brock v. Weiser*, 1987 U.S. Dist. LEXIS 14093*7 (N.D. Ill. 1987) (rejecting privilege where Secretary of Labor was a party to the action, and decision-making process itself had become an issue); *Byrd v. Jossie*, 2008 U.S. Dist. LEXIS 70202*10-11 (D. Or. 2008) (noting, without further analysis, that government was a party to the action in rejecting privilege claim). Although the general rule requiring a federal habeas petitioner to name his custodian as respondent precluded Petitioner from naming the Governor individually in this action, *see, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004), the Governor's reversal of Petitioner's parole grant is the governmental action that allegedly violated Petitioner's constitutional rights. Accordingly, despite the fact that the Governor is not a nominal party to this action, the role of the Governor in this litigation weighs heavily against upholding the deliberative process privilege with respect to the information sought in Interrogatory No. 1. *See In re Subpeona*, 145 F.3d at 1424 (noting that "the privilege was fashioned in cases where the governmental decision-making process is collateral to the plaintiff's suit").

### d. Effect of Disclosure

The purpose of the deliberative process privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny. *See, e.g., Assembly of California*, 968 F.2d at 920. In essence, Interrogatory No. 1 seeks identification of the materials that were reviewed in connection with Petitioner's parole reversal, the identity of the person reviewing such information, and the length of time spent on such review and the subsequent drafting of the parole reversal. It does not appear that disclosure of the information sought in Interrogatory No. 1 would chill the Governor's willingness to freely explore possibilities or engage in internal debates in any way, and neither Respondent nor the Governor's representative has articulated any reason why responding to Interrogatory No. 1 would do so. Although the Governor's Legal Affairs Secretary, Andrea Lynn Hoch, makes the conclusory assertion that "disclosure of such

communications will have a significant chilling effect on the exchange of information," Ms. Hoch's statement clearly applies to substantive communications contained within the documents identified in the privilege log and does implicate the factual responses sought in Interrogatory No. 1. (Joint Statement, Attachment 4). Interrogatory No. 1 does not seek to discover the substance of any communications or documents. To the extent that issuing responses to Interrogatory No. 1 would have some chilling effect on the Governor's function, the Court finds that Petitioner's interest in accurate fact-finding outweighs the Governor's interest in the confidentiality of the factual information sought in Interrogatory No. 1. Accordingly, the Governor's objection to Interrogatory No. 1 on the basis of the deliberative process privilege is overruled.

### 2. Mental Process Privilege

The Governor objects to Interrogatory No. 1 on the grounds that "the Governor should not be forced to disclose his mental process while acting in a quasi-judicial capacity." (Joint Statement at 36).

The applicability of the mental process privilege to the logistical information sought in Interrogatory No. 1 is extremely doubtful. *See North Pacifica,* 274 F.Supp.2d at 1122 (privilege applies to "uncommunicated motivations"); *see also Irons v. Sisto*, 2007 U.S. Dist. LEXIS 95310*13 (E.D. Cal. 2007) (holding that "petitioner is free to ask questions regarding any parole policies the Commissioners were aware of, but may not ask questions regarding how those policies *affected* their decisions") (emphasis added). Assuming *arguendo* that the mental process privilege applies to Interrogatory No. 1, for the same reasons discussed above, the Court finds that the balance of interests requires the Court to overrule the Governor's mental process privilege objection. *See Id.* ("where the mental processes privilege is available, the analysis is the same as that for the deliberative processes privilege").

### B. Secretary Cate's Response to Interrogatory No. 1

Respondent objects to Interrogatory No. 1 on the grounds that he does not have personal knowledge of the information sought and cannot provide the requested information. Petitioner

replies to Respondent's objection by noting that it is Respondent's duty to provide information available to Respondent, even if such information is beyond Respondent's personal knowledge. *See* Fed. R. Civ. P. 33. In light of the Governor's invocation of the mental process and deliberative process privileges, the Court is satisfied that the information sought in Interrogatory No. 1 is not "available" to Respondent within the meaning of Rule 33. Accordingly, Respondent's objection is sustained.

**Interrogatory No. 4**

> Is it your contention that the Governor's exercise of his review authority California Constitution article V, section 8(b), and California Penal Code § 3041.2 did not create a significant risk of lengthening the term of Thomas' incarceration?
>
> a. If so, please specify all facts and evidence upon which you base that contention.

The Governor objects to Interrogatory No. 4 on the grounds that it calls for a legal conclusion, calls for speculation, and is vague and ambiguous. (Joint Statement at 23).

**A. Calls for Legal Conclusion**

Generally, the fact that an interrogatory calls for a legal conclusion is not grounds for an objection. *E.g.*, *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 648 (D. Kan. 2004) ("that a discovery request 'calls for a legal conclusion' is not valid objection"); *see also WhitServe LLC v. Computer Patent Annuities N. America*, 2006 U.S. Dist. LEXIS 27048* 6 (D. Conn 2006) (party may even "demand that its opponent state exactly what its claims are, even asking for legal conclusions or opinions") (citnig *S.S. White Burs, Inc. v. Neo-Flo, Inc.*, U.S. Dist. LEXIS 7718 at *3-4 (E.D. Pa. 2003) and *Conopco, Inc. v. Warner-Lambert Co.*,2000 U.S. Dist. LEXIS 1601 at *4-5 (D. N.J. Jan. 26, 2000)); *G.D. v. Monarch Plastic Surgery, P.A.*, 2007 U.S. Dist. LEXIS 5509 *35-36 (D. Kan. 2007) ("The court finds that this is not a proper objection to an interrogatory"); *Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 688 (S.D. Fla. 2007) ("Defendants objection that the subject interrogatories ...call for a legal conclusion is unavailing"); *Campbell v. Washington*, 2009 U.S. Dist. LEXIS 21718*7 (E.D. Wash. 2009) (The Federal Rules expressly direct that "[a]n

interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"); *Sellick Equip. v. United States*, 18 C.I.T. 352, 355 (Ct. Int'l. Trade 1994) (same) (citing *Diversified Prods. Corp. v. Sports Center Co.*, 42 F.R.D. 3, 5 (D. Md. 1967)).  "The only kind of interrogatory that is objectionable on the basis that it calls for a legal conclusion is one that extends to legal issues unrelated to the facts of the case."  *Holland v. GMAC Mortg.*, 2005 U.S. Dist. LEXIS 10737*10 (D. Kan. 2005).  Interrogatory No. 4 is clearly related to the facts of the instant case.  Accordingly, this objection lacks merit, and it is overruled.

### B. Calls for Speculation

The Governor offers no analysis in support of his argument that Interrogatory No. 4 calls for speculation.  Interrogatory No. 4 asks simply for a contention, a query which does not require speculation.  In order to respond to Interrogatory No. 4, the Governor need only consider his knowledge and experience concerning implementation of article V, section 8(b) and form a contention.  Contention interrogatories such as Interrogatory No. 4 are clearly authorized by Federal Rule of Civil Procedure 33(a)(2).  The objection is overruled.

### C. Vague and Ambiguous

The Governor objects that the phrase "significant risk of lengthening the terms [sic] of Thomas' incarceration" is vague and ambiguous. (Joint Statement at 23). The Governor offers no analysis of why he views Interrogatory No. 4 as too vague and ambiguous to respond.

The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity by demonstrating that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases."  *E.g. Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 696 (D. Kan. 2007); *Johnson v. Kraft Foods N. Am., Inc.,* 238 F.R.D. 648, 655 (D. Kan. 2006)*; accord Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) ("party properly objecting to an objection on the grounds of vagueness must explain the particular ways in which a request is vague").  The Governor has failed to meet his burden and therefore the objection is overruled.  Further, the only portion of Interrogatory No. 4 that can be

1    characterized as vague and ambiguous in good faith is the phrase "significant risk." The Court finds

2    that a common sense reading the disputed phrase based on the ordinary definitions of the terms

3    "significant" and "risk" permits the Governor to respond to Interrogatory No. 4.

4    ///

5

6    **D. Request to Delay Response**

7    The Governor asks the Court to permit them to respond to Interrogatory No. 4 after

8    designated discovery is complete. (Joint Statement at 44). The request is granted.

9    **Interrogatory No. 8**

10       During the period January 17, 1980 through November 7, 1988, how many times each
         year was an indeterminate sentence life prisoner whose commitment offense was
11       murder found to be suitable for parole by a hearing panel of the Board?

12              a. Of that number, how many were released on parole without having to
                appear before a subsequent hearing panel?

13   **A. Governor's Response**

14

15   The Governor and Respondent object to Interrogatory No. 8 on the grounds that the

16   information sought is not relevant to this action; that the interrogatory is overbroad; that the

17   information sought is not in the custody, possession, or control of the Governor's office; and that

18   responding to the interrogatory would be extremely burdensome and onerous.[12]  The Joint Statement

19   indicates that the parties' dispute has been narrowed to the propriety of subpart (a).

20   **1. Relevance**

21   The Governor's relevancy objection lacks merit. The Governor aptly articulated the

22

23   [12] The Governor complains that responding to Interrogatory No. 8 "requires the Governor's office to conduct research and
     investigation on behalf of Petitioner which there is no legal obligation to do." (Joint Statement at 45). Under the Federal
24   Rules of Civil Procedure, only parties are subject to interrogatory request. Fed. R. Civ. P. 33. The Court appreciates that
     the Governor has complied with discovery thus far despite the fact that he is not a nominal party to this action and is not yet
25   subject to subpoena. However, because it is the Governor's action which allegedly violated Petitioner's constitutional rights,
     the Court finds that the Governor is required to respond to Petitioner's interrogatory requests to the same extent as a nominal
26   party. *See Harris v. Nelson*, 394 U.S. 286, 300-01 (noting plenary power of federal habeas courts to issue orders necessary
     to facilitate factual inquiries and countenancing use of interrogatories to obtain discovery from non-parties in habeas context).
27   Petitioner is entitled to discovery of information within the Governor's possession, and it is this Court's duty to provide the
     necessary facilities and procedures for an adequate inquiry. *Id.*
28

reason why the information sought in Interrogatory No. 8 is relevant to this action:
"Petitioner contends that...if the numbers of inmates being found suitable for parole have
increased, but the inmates have not been released without having to appear before a
subsequent hearing panel, this would help establish the real world, practical effect" of the
Governor's review.  (Joint Statement at 49).  The contention that the relevance of the
information sought in Interrogatory No. 8 is "speculative" is of no avail; "discovery should
ordinarily be allowed under the concept of relevancy unless it is clear that the information
sought can have no possible bearing upon the subject matter of the action." *La Chemise
Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164, 170-71 (D. Del. 1973).  The Governor's
argument that Petitioner "seeks to compare situations which are not the same" does no more
than state the obvious.  (Joint Statement at 50).   As Petitioner correctly notes, "it is
precisely because the situations before and after the enactment of article V, section 8(b) are
not the same that the information sought" by Interrogatory No. 8 is relevant.  (Joint
Statement at 50).  The relevancy objection is overruled.

## 2. Overbroad

A party opposing discovery on the basis that the request is overbroad bears the
burden of showing why discovery should be denied. *E.g., SEC v. Brady*, 238 F.R.D. 429,
437 (N.D. Tex. 2006).   The Governor's objection fails to articulate a legitimate basis for his
contention that Interrogatory No. 8 is overbroad.  The Governor complains that Interrogatory
No. 8 seeks information that dates back nearly thirty years, however, he does not explain
why such a request is overly broad in the context of this action.  Although Interrogatory No.
8 does encompass a large period of time, Interrogatory No. 8 seeks data needed to conduct a
comparative analysis of the operation of California's parole system before and after the
challenged statute.  Because comparative analysis of the likelihood of release before and
after the enactment article V, section 8(b) is clearly relevant to Petitioner's claim, the
objection is overruled.

### 3. Absence of Custody or Control

The Governor objects to Interrogatory No. 8 on the grounds that the information requested therein is not in the custody, possession, or control of the Governor's office. The fact that the information sought in Interrogatory No. 8 is not currently in the Governor's "custody, possession, or control" is not a valid basis for an objection to an interrogatory request.

Rule 33 imposes a duty on the responding party to secure all information *available* to it. *See e.g., General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1211 (8th Cir. 1973) (discussing duty of corporate entity to furnish information possessed by its officers and agents); *Brunswick Corp. v. Suzuki Motor Co.*, 96 F.R.D. 684, 686 (E.D. Wis. 1983) (holding that information possessed by parent corporation's subsidies was "available" to parent corporation for purposes of Rule 33). Where an interrogatory is directed at a party that is a governmental entity, Rule 33(b)(1)(B) requires the party to furnish information "available" to an officer or agent of the governmental entity. Fed. R. Civ. P. 33(b)(1)(B). The Governor does not contend that the information sought in Interrogatory No. 8 is not "available" to him within the meaning of Federal Rule of Civil Procedure 33(b)(1)(B). Accordingly, the Governor's objection is overruled.

### 4. Undue Burden

The Governor objects that responding to Interrogatory No. 8 would be "extremely burdensome and onerous as it requires the Governor's office to conduct research and investigation on behalf of Petitioner." (Joint Statement at 45). In making a decision regarding burdensomeness, a court must balance the burden on the interrogated party against the benefit to the discovering party of having the information. *See, e.g., Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975)); *see also Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 152 (E.D. NY 2008) (balancing burden imposed by interrogatory against

relevance of the information sought to the action); *Tolstih v. L.G. Elecs., USA, Inc.*, 2009 U.S. Dist. LEXIS 18573* 22 (S.D. Ohio 2009) (same). Discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery. *Azimi v. UPS, Inc.*, 2007 U.S. Dist. LEXIS 49762*25 (D. Kan. 2007) (citing *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 333 (D. Kan.1991)).

As a threshold matter, the Governor's objection is insufficient, as an objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence. *See, e.g., Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992). The Governor failed to support his objection with any explanation or citation to evidence. However, in support of its identical objection to Interrogatory No. 8, Respondent cites the declaration of Thomas Remy. (Joint Statement at 52). Accordingly, the Court evaluates the Governor's objection in light of the Remy declaration.

Remy declares that he is a Senior Legal Analyst with the California Department of Corrections and Rehabilitation. (Remy Sup. Dec. at 2). Remy states that there is not an "existing list identifying the inmates who were granted parole" during the period from 1981 to 2007, and that "in order to determine who those inmates are, one would have to conduct an individual manual search through various forms of data." (Id.). In order to ascertain the information requested in Interrogatory 8, Remy states that "one would have to run a list of every inmate with a commitment offense of murder who was found suitable for parole, and then manually check the inmate's hearing history to determine if they were released without having to appear before a subsequent hearing panel." (Id. at 3). Remy estimates that it would take fifteen minutes to check each inmate's hearing history, although he does not provide the basis for his estimate.

Remy's declaration does not establish that Interrogatory No. 8 imposes an undue burden . As several district courts have noted:

The fact that a responding party maintains records in different locations, utilizes a filing system that does not directly correspond to the subjects set forth in Plaintiffs' interrogatory, or that responsive documents might be voluminous does not suffice to sustain a claim of undue burden. *Cf. Caterpillar, Inc. v. Detroit Diesel Corp.*, 1997 U.S. Dist. LEXIS 2466, 1997 WL 33165848, *4 (N.D. Ind. 1997). *See also Simon v. Pronational Insurance Co.*, 2007 U.S. Dist. LEXIS 96318, 2007 WL 4893477, *2 (S.D. Fla. 2007) (in granting plaintiff's motion to compel documents regarding similarly situated policy holders over a six-year period, held that defendant's claim of undue burden was insufficient to preclude production; noted that a company cannot sustain a claim of undue burden by citing deficiencies in its own filing system); *Kelly v. Montgomery Lynch & Associates, Inc.*, 2007 U.S. Dist. LEXIS 93651, 2007 WL 4412572, *2 (N.D. Ohio 2007) (in granting plaintiff's motion to compel, rejected defendant's claim of undue burden, notwithstanding defendant's proffer that its "filing system is not maintained in a searchable way and the information sought would require 'manually searching through hundreds of thousands of records.'")

*Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 2008 U.S. Dist. LEXIS 106695*17 (D. Col. 2008). The fact that, according to Remy's declaration, it would take approximately one-hundred and eleven hours to conduct the data review necessary to respond to Interrogatory No. 8 is insufficient to establish an undue burden.[13] *Accord Azimi*, 2007 U.S. Dist. LEXIS 49762 at 24-26 (D. Kan. 2007) (responding party's estimate that it would take more than 100 hours and at least two months to locate and print information sought held insufficient to establish undue burden); *Beach v. City of Olathe*, 203 F.R.D. 489, 493-94 (D. Kan. 2001) (overruling objection where responding to interrogatory required hundreds of hours of document review); *Weller v. Am. Home Assur. Co.*, 2007 U.S. Dist. LEXIS 27284* 12-14 (N.D. W. Va. 2007) (overruling objection despite responding party's affidavit which stated response would entail "at least hundreds of man hours"). Although Interrogatory No. 8 may indeed be burdensome, it is not *unduly* so given the importance of comparing the likelihood of release on parole before and after the passage of article V, section 8(b) in this action.

In order to prevail on his ex post facto claim, Petitioner must establish that article V,

---

[13] The Court questions the credibility of Remy's estimation, because as discussed below in response to the Governor's objection to Interrogatory No. 9, portions of Remy's declaration exaggerate the amount of time necessary to comply with Petitioner's discovery requests.

section 8(b) created a significant risk of prolonging his incarceration as compared to Petitioner's likelihood of release under the previous statutory scheme. The data sought in Interrogatory No. 8 will facilitate a comparative analysis of the likelihood of a parole grant resulting in actual release before and after the enactment of article V, section 8(b) and thus may help establish that Petitioner is entitled to relief. Because the information sought in Interrogatory No. 8 may provide significant evidence in support of Petitioner's claim, Petitioner's interest in obtaining the discovery sought in Interrogatory No. 8 outweighs the burden imposed on the Governor by the request. *Compare Azimi*, 2007 U.S. Dist. LEXIS 49762 at 25 (no undue burden where information was needed to conduct a comparative analysis critical to plaintiff's claim) *with Flatow v. Islamic Republic of Iran*, 202 F.R.D. 35, 37-38 (D.D.C. 2001) (sustaining objection where it was estimated compliance would take 1,500 hours and the search was unlikely to produce relevant information). The Court finds that, in light of the importance of the information sought, the Governor has not established that Interrogatory No. 8 imposes an undue burden. The Governor's objection is overruled.

**B. Secretary Cate's Response**

Secretary Cate objects to Interrogatory No. 8 on the basis of relevancy and burdensomeness. For the reasons discussed above, Secretary Cate's objections are overruled.

**Interrogatory No. 9**

> During the period November 7, 1988 through the present, how many times each year was an indeterminate sentence life prisoner whose commitment offense was murder found to be suitable for parole by a hearing panel of the Board?
>
> a. Of that number, how many were released on parole without having to appear before a subsequent hearing panel?

**A. The Governor's Response**

The Governor objects to Interrogatory No. 9 on the grounds that the information sought is not relevant to this action; that the interrogatory is overbroad; that the information sought is not in the custody, possession, or control of the Governor's office; and that

responding to the interrogatory would be extremely burdensome and onerous.  The Joint

Statement indicates that the parties' disputes have been narrowed to the propriety of the

inquiry contained in subpart (a) of Interrogatory No. 9.

///

### 1. The Governor's First Three Objections

As discussed above, comparative analysis of a prisoner's likelihood of release

without appearing before a subsequent hearing panel before and after the enactment of

article V, section 8(b) is relevant to determining whether article V, section 8(b) creates a

significant risk of prolonging Petitioner's incarceration.   Because the information sought in

Interrogatory No. 9 is necessary to conduct a comparative analysis of parole release trends

before and after the enactment of article V, section 8(b), the information is relevant to this

action.  The Governor's relevancy objection is overruled.

For the same reasons discussed above in response to the Governor's objections to

Interrogatory No. 8, the Governor's objection that Interrogatory No. 9 is overbroad is

overruled.  For the same reasons discussed above, the Governor's objection that the

information sought in Interrogatory No. 9 is not in the custody, possession, or control of the

Governor's office is overruled.

### 2. Undue Burden

The Governor adopts Secretary Cate's undue burden objection to Interrogatory No.

9.  The analytical framework set forth above in response to the Governor's undue burden

objection to Interrogatory No. 8 applies with equal force to the Governor's objection to

Interrogatory No. 9. Because Interrogatory No. 9 concerns a larger body of data, the parties'

objection warrants independent consideration.

The Remy declaration states that approximately 1,600 prisoners convicted of murder

were granted parole release dates between 1981 and 2009;  442 of these grants occurred

prior to 1988. (Remy Sup. Dec. at 2-3). Thus, according to Remy's declaration, Interrogatory No. 9 would require either the Governor or Secretary Cate to conduct a "manual check" of the hearing histories of approximately 1,158 murderers granted parole between 1989 and 2009. (Id.). Remy estimates that, due to the manner in which the relevant data is compiled and stored, each manual check would take approximately fifteen minutes. Based on Remy's estimations, responding to Interrogatory No. 8 and No. 9 would take a total of 400 hours; 110.5 hours for the 442 prisoners' records implicated by Interrogatory No. 8, plus 289.5 hours for the 1,158 prisoners' records implicated by Interrogatory No. 9. (Id.). However, the Court finds Remy's estimation to be unreliable, at least with respect to the data implicated by Interrogatory No. 9.

The Remy declaration states, "since 1991, the Governor's office has submitted Legislative Reports which contain the information as to who has had a parole grant reversed. Petitioner can deduce from those reports who appeared for subsequent parole consideration hearings." (Remy Sup. Dec. at 4). Both the Governor and Secretary Cate are also equipped with the powers of deductive reasoning. Where a prisoner's name appears in the Governor's Legislative Report for a given year, a fifteen-minute "manual check"of that prisoner's hearing history will not be necessary. Thus, the number of "manual checks" needed to respond to Interrogatory No. 9 is certain to be less than the total number of parole grants issued between 1989 and 2009, perhaps significantly so. Because Remy's declaration fails to account for the time savings that can be achieved through use of the Governor's Legislative Reports, the Court finds that Remy's declaration is not sufficiently reliable to sustain the parties' objection on the grounds of undue burden.

### Interrogatory No. 10

Does or did the Governor or the Board have a policy whereby the Governor exercises his review authority under California Constitution article V, section 8(b), and California Penal Code § 3041.2 to review only Board grants of parole?
a. If yes, please identify all documents in which that policy is or was memorialized, including but not limited to communications with the Board.

b. If not, please identify each case since November 8, 1988 in which the Governor reviewed a Board decision denying parole (excepting those cases in which review was requested by the prisoner

The Governor objects that Interrogatory No. 10 is overbroad, irrelevant, and seeks information not in the Governor's custody, possession, or control.  The Governor also invokes the deliberative process privilege, the quasi-judicial process privilege, the attorney-client privilege, and the attorney work-product privilege.

Subject to his objections, the Governor states that he does not have a policy to review only Board grants of parole.  (Id. at 58).  The Governor also states that in practice the Board "provides the Governor's Office with all parole grants."  (Id.).

**A. The Governor's Objections**

None of the Governor's privilege objections are stated with sufficient particularity to sustain a claim of privilege.  Accordingly, each of the Governor's claims of privilege are overruled.

The Governor's objection that the information sought in Interrogatory No. 10 is irrelevant to this action lacks merit.  The policies of the Governor and parole board are clearly relevant to determining the manner in which article V, section 8(b) is implemented. *See Garner,* 529 U.S. at 257 ("the Court of Appeals was incorrect to say the Board's policies were of no relevance in this case").

The Governor's objection that Interrogatory No. 10 is overbroad as to time is inadequate in that the Governor fails to articulate a basis for his objection.  The Governor also fails to provide an adequate factual basis for his claim that the information sought in Interrogatory No. 10 is not available to him within the meaning of Rule 33.  The Governor's argument that the information sought in Interrogatory No. 10 is equally accessible to Petitioner is not a valid basis for an objection.

**B.  Responses to Interrogatory No. 10**

The Court finds that the Governor and Respondent have provided a sufficient response to the primary inquiry posed by Interrogatory No. 10. The Governor states that he does not have a policy whereby he only exercises his authority to review parole grants. (Joint Statement at 58). The Governor also states that in "practice" the Board provides the Governor with all parole grants. (Id.). As the Governor notes, it is unnecessary to "quibble" over a choice of words. The Court reads the Governor's statement as an affirmative answer to the question "does the board have a policy whereby only parole grants are reviewed by the Governor?"

The only remaining query entailed by Interrogatory No. 10 concerns identification of documents memorializing the Board's policy. To the extent such documents exists, they must be identified.

**Interrogatory No. 11**

Why did the Governor not reverse the Board's fourth grant of parole to Thomas in 2008?

a. If those reasons are memorialized in any documents, please identify them

**A. The Governor's Objections**

The Governor invokes the deliberative process privilege, the mental process privilege, and the attorney client privilege in response to Interrogatory No. 11.

**1. Attorney- Client Privilege**

Interrogatory No. 11 does not seek to discover the contents of any attorney-client communications; it asks simply for the reasons for the Governor's decision. Accordingly, the Governor's objection is overruled. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) (privilege protects only communications, not underlying facts).

**2. Deliberative and Mental Process Privileges**

The deliberative and mental process privileges are a qualified privileges, and a

litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. *E.g. Carter,* 307 F.3d at 1090. Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Warner Comm's.,* 742 F.2d at 1161.

The information sought in Interrogatory No. 11 is potentially relevant to Petitioner's claim. If, for example, the Governor's reason for not reversing Petitioner's 2008 parole grant reveals that the Governor's is not making his review decisions based on an assessment of prisoners' dangerousness, that information could support Petitioner's claim that the Governor's review is substantively different from–and potentially more onerous than– the Board's review. The fact that Interrogatory No. 11 seeks information that may provide important evidence in support of Petitioner's claim weighs heavily against sustaining the Governor's claim of privilege.

The unavailability of other evidence responsive to Interrogatory No. 11 and the Governor's role in this litigation also weigh against sustaining the Governor's claim of privilege. However, unlike the information sought in Interrogatory No. 1, the information sought in Interrogatory No. 11 could potentially expose the Governor's decision making process in such a way as to discourage candid discussion and thereby undermine the Governor's ability to perform his function under article V, section 8(b).

The Court finds that Petitioner's interest in accurate fact-finding outweighs the Governor's interest in keeping the reasons for his decision not to reverse Petitioner's 2008 parole grant completely classified. Accordingly, the Governor shall submit a response to Interrogatory No. 11 for the Court to review *in camera*. After the Court has completed its *in camera* review, the Court will re-weigh the parties' competing interests in light of the

importance of the Governor's response to Petitioner's case and the extent to which revealing the Governor's response would undermine the Governor's ability to perform his function. In the event the Court determines that Petitioner is entitled to obtain the Governor's response to Interrogatory No. 11, the Court may subject the information to a protective order. The separate issue of whether the contents of the documents identified in the privilege log as documents number three and four are discoverable is addressed below.

### B. Respondent's Objection

In light of the Governor's invocation of privilege, Respondent's objection that the information requested in Interrogatory No. 11 is not available to him is sustained.

### Interrogatory No. 12

> What safeguards, if any, has the Governor put into place to ensure that political considerations or public pressure play no part in his decisionmaking under California Constitution article V, section 8(b), and California Penal Code § 3041.2?

The Governor objects to Interrogatory No. 12 on the grounds of relevancy and vagueness. The Governor's relevancy objection lacks merit. The fact that the Governor may be influenced by public pressure when reviewing parole grants may, combined with other evidence, help establish that article V, section 8(b) created a significant risk of prolonging Petitioner's incarceration. Accordingly, Interrogatory No. 12 meets the minimal relevancy standard applicable in the context of federal discovery.

The Governor contends that the terms "safeguards," "political considerations," and "public pressure" are vague and ambiguous. The Governor complains that "it is unclear what these terms mean or in what context they are used." (Joint Statement at 68). The Court finds that the Governor has failed to meet his burden of demonstrating that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *E.g. Moss*, 241 F.R.D. at 696 . A common sense reading the disputed phrases permits the Governor to respond to Interrogatory No. 12 and therefore the

1    Governor's objection is overruled.

2    **Interrogatory No. 13**

3
           What criterion or criteria does the Governor use to determine whether an
4    indeterminate sentence life prisoner who committed murder should be released on
     parole?
5              a. If the Governor uses more than one criteria, does he accord each equal
               weight?
6              b. If not, please list the criteria in order of most to least importance to the
7              Governor's review decisionmaking.

8         The Governor objects to interrogatory No. 13 on the basis of the deliberative process

9    privilege, mental process privilege, and attorney-client privilege.  The Governor also

10   contends that the term "criteria" is vague.  The Governor's vagueness objection is overruled.

11   *See, e.g., Moss*, 241 F.R.D. at 696.

12
           **A. Attorney- Client Privilege**
13

14        Interrogatory No. 11 does not seek to discover the contents of any attorney-client

15   communications; it asks simply for Governor's review criteria and the manner in which such

16   criteria are evaluated.  Accordingly, the Governor's objection is overruled.  *See, e.g.,*

17   *Upjohn*, 449 U.S. at 396 (privilege protects only communications, not underlying facts).

18         **B. Deliberative and Mental Process Privileges**

19        The information sought in Interrogatory No. 13 is relevant to Petitioner's claim

20   because it may reveal whether the Governor exercises his review authority consistent with

21   his statutory commands.  The fact that Interrogatory No. 13 seeks information that may

22   provide important evidence in support of Petitioner's claim weighs heavily against

23   sustaining the Governor's claim of privilege.

24        Although the statutory parole criteria that must be considered by the Governor is a

25   matter of public knowledge, to the extent the Governor employs additional criteria, the

26   Governor is the only available source of evidence regarding such additional criteria.

27

28

Similarly, the Governor is the only source of information concerning the manner in which he evaluates such criteria. The unavailability from other sources of the information sought in Interrogatory No. 13 weighs against sustaining the Governor's claim of privilege. As discussed above in section 1, the Governor's role in this litigation also weighs against sustaining the Governor's claim of privilege.

It is not clear to the Court that responding to Interrogatory No. 13 would expose the Governor's decision making process in such a way as to discourage candid discussion and thereby undermine the Governor's ability to perform his function under article V, section 8(b). However, assuming *arguendo* that Interrogatory No. 13 implicates the government interests underlying the mental process and deliberative process privileges, the Court finds that Petitioner's interest in accurate fact-finding outweighs the Governor's interest in keeping information sought in Interrogatory No. 13 completely classified. Accordingly, the Governor shall submit a response to Interrogatory No. 13 for the Court to review *in camera*. After the Court has completed its *in camera* review, the Court will re-weigh the parties' competing interests in light of the importance of the Governor's response to Petitioner's case and the extent to which revealing the Governor's response would undermine the Governor's ability to perform his function. In the event the Court determines that Petitioner is entitled to obtain the Governor's response to Interrogatory No. 13, the Court may subject the information to a protective order.

**Interrogatory No. 16**

In the course of performing his review under California Constitution article V, section 8(b), and California Penal Code § 3041.2, has the Governor ever contacted the prisoner or the attorney of the prisoner whose parole decision is being reviewed in order to obtain information or documents?
a. If so, how many times?
b. If so, what information or documents were requested?
c. If not, why not?

The Governor objects that Interrogatory No. 16 is irrelevant, overbroad as to time,

and seeks information not in the Governor's custody, possession, or control.  The Governor also invokes the mental process privilege, deliberative process privilege, and attorney-client privilege.

## A. Privilege Objections

It is clear that Interrogatory No. 16 does not seek to discover confidential attorney-client communications.  Primarily, Interrogatory No. 16 seeks information regarding the Governor's communications with members of the public. Such communications cannot be deemed confidential for the purpose of any of the privileges the Governor invokes.

The only portion of Interrogatory No. 16 that potentially implicates the mental process or deliberative process privilege is subpart (c).  However, because the Governor fails to articulate a basis for any of his privilege claims, the Governor fails to carry his burden of establishing the applicability of any privilege and therefore his objections are overruled.

## B. Other Objections

The information sought in Interrogatory No. 16 is sufficiently related to Petitioner's claim to satisfy the minimal relevancy standard applicable to federal discovery.  While the information sought might not be very probative concerning the ultimate issue, whether the Governor seeks input from prisoners during parole review may, coupled with other evidence, help establish that article V, section 8(b) is applied in a manner that creates a significant risk of prolonging Petitioner's incarceration.  Accordingly, the Governor's relevancy and overbreadth objections are overruled.

The Governor fails to establish that the information requested in Interrogatory No. 16 is not available to him within the meaning of Rule 33 and therefore his objection as to his possession, custody, and control of the information sought is overruled.

**Interrogatory No. 17**

In the course of performing his review under California Constitution article V, section 8(b), and California Penal Code § 3041.2, has the Governor ever

conducted a hearing in which the prisoner whose parole decision is being reviewed has the right to be present, represented by counsel?

    a. If not, why not?

The Governor states "as there is no right [to a hearing before the Governor under California law], the answer to [Interrogatory No. 17] would be no." (Joint Statement at 79). The Court finds that the Governor has provided a sufficient response to Interrogatory 17.

**Interrogatory No. 18**

In exercising his authority under California Constitution article V, section 8(b), and California Penal Code § 3041.2, does or did the Governor consider input from crime victims, crime-victim organizations, or crime-victim representatives?

    a. If so, please identify any such victims, organizations, or representatives who provided the input and the approximate frequency of the consideration of that input.

The Governor objects that Interrogatory No. 18 is vague, overbroad, irrelevant, and requires him to compile information on behalf of Petitioner which he is not legally obligated to do. The Governor also invokes the deliberative process and mental process privileges.

**A. Relevancy, Over breadth, and Vagueness Objections**

The information sought in Interrogatory No. 18 is sufficiently related to Petitioner's claim to satisfy the minimal relevancy standard applicable to federal discovery. While the information sought might not be very probative concerning the ultimate issue, whether the Governor considers input from victims or crime-victim organizations during parole review may, coupled with other evidence, help establish that article V, section 8(b) is applied in a manner that creates a significant risk of prolonging Petitioner's incarceration. The Governor's relevancy and overbreadth objections are overruled.

The Governor objects that Interrogatory No. 18 is vague as to time. The Court perceives no such vagueness. The Governor also complains that the terms "crime victims," "crime-victim organizations," and "crime-victims representatives" are too vague to permit a response. The Court finds that the Governor has failed to meet his burden of demonstrating

that "more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases." *E.g. Moss*, 241 F.R.D. at 696. A common sense reading the disputed phrases permits the Governor to respond to Interrogatory No. 18 and therefore the Governor's objection is overruled.

Finally, the Governor fails to establish that the information requested in Interrogatory No. 16 is not available to him within the meaning of Rule 33 and his objection as to his possession, custody, and control of the information sought is overruled.

**B. Privilege Objections**

Each of the factors the Court must balance in adjudicating the Governor's privilege claims weigh against sustaining the Governor's objections. The information is relevant to Petitioner's claim, no other source of the information sought exists, the Governor's conduct is the crux of Petitioner's claim, and Interrogatory No. 19 does not seek deliberative information. Interrogatory No. 19 posits a yes or no question and then asks merely for identification of certain groups whose input might be considered by the Governor; Interrogatory No. 19 does not ask *how* the Governor considers such information. The information sought in Interrogatory No. 19 is unlikely to expose the Governor's decision making process in such a way as to undermine the Governor's ability to perform his function under article V, section 8(b). However, assuming *arguendo* that Interrogatory No. 19 implicates the government interests underlying the mental process and deliberative process privileges, the Court finds that Petitioner's interest in accurate fact-finding outweighs the Governor's interest in keeping information sought in Interrogatory No. 19 classified. The Governor's claims of privilege are therefore overruled.

**Interrogatory No. 20**

> In each instance that the Governor has exercised his review authority under California Constitution article V, section 8(b), and California Penal Code § 3041.2, to reverse a Board decision granting parole, specify whether the Board at the prisoner's subsequent hearing granted or denied parole.

The Governor objects that Interrogatory No. 20 is irrelevant, vague as to time, seeks information not in the Governor's custody, possession, or control, and is unduly burdensome. For reasons discussed above, the Governor's relevancy, vagueness, and possession objections lack merit.

The Court agrees with Respondent and the Governor that Interrogatory No. 20 imposes an undue burden. In making a decision regarding burdensomeness, a court must balance the burden on the interrogated party against the benefit to the discovering party of having the information. *See, e.g., Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987).

As Petitioner points out, the fact that a subsequent hearing panel denies a prisoner parole following a reversal by the Governor may support the inference that the Governor's decision influenced the Board's action. The information sought in Interrogatory No. 20 may thus provide evidence in support of Petitioner's claim. However, the probative value of the statistical trends revealed by the information sough in Interrogatory No. 20 is diminished greatly by the plethora of other factors that may cause a Board to deny parole during a subsequent hearing. A prisoner may have committed a serious infraction in prison before the subsequent hearing; the prisoner may have changed his account of the crime during the subsequent hearing; an new, unfavorable psychological report may have been prepared prior to the subsequent hearing; the prisoner may have lashed out at the Board during the subsequent hearing. Thus, the fact that a subsequent hearing panel denies a prisoner parole afer a gubernatorial reversal does not necessarily establish that the Governor's reversal influenced the Board's decision.

Viewed in light of the diminished probative value of the information sought in Interrogatory No. 20, the Court is satisfied that the burden imposed by Interrogatory No. 20 outweighs the benefit of the information to Petitioner's cause. The burden imposed by Interrogatory No. 20 is particularly undue in light of the fact that Petitioner may obtain

evidence of how a Governor's reversal affects a subsequent hearing panels decision from other sources. For example, Petitioner may offer testimony from past or present Board members discussing the influence of gubernatorial reversals on Board practices. Accordingly, the parites' joint objection to Interrogatory No. 20 on the basis of undue burden is sustained.

## III. Requests for Production of Documents

## Document Request No. 2

> All documents, including but not limited to written directives, instructions, e-mails, correspondence, memoranda, computer (including word processing) records, faxes, notes, and communications, whether originating from the Governor's Office, the Board, or any other source, relating to guidance provided to any individuals involved in gubernatorial review of Board indeterminate sentence parole decisions pursuant to California Constitution article V, section 8(b), and California Penal Code § 3041.2, as to the findings and policies to be followed in such review. Please include in your production of documents within the terms of this request:
>
> a. All documents that specifically address the political consequences to the Governors of their decisions pursuant to California Constitution article V, section 8(b), and California Penal Code § 3041.2.

### A. The Governor's Objections

The Governor objects to this document request on several grounds, including: (1) the request is compound, vague, ambiguous, overly broad, and incomprehensible; (2) relevance; (3) the request is unduly burdensome; (4) the documents sought by the request is protected by deliberative process privilege; and (5) the documents sought are protected by attorney client privilege.

### 1. Compound, Vague, Ambiguous, Overly Broad, Incomprehensible

The Court finds that the request is neither incomprehensible, compound, vague, or ambiguous. It seeks documents relating to any guidance provided to individuals involved in the gubernatorial review, pursuant to article V, section 8(b), regarding the Board's parole decisions of prisoners serving indeterminate sentences. The Governor's objections are overruled.

However, the Court finds that the primary clause of Document Request No. 2 is overbroad to the extent it requests documents concerning specific deliberations in cases other than Petitioner's. Accordingly, the Governor need only provide documents which set forth *general* guidance provided to any individuals involved in gubernatorial review, not documents that were intended solely for use in reviewing a particular prisoner's parole suitability, other than Petitioner's.

### 2. Relevance

As the requested documents may shed light on the policies that guide the gubernatorial review, the evidence meets the standard of relevance required for discovery of documents. The Court finds that the request may lead to the discovery of evidence relevant to determining if the gubernatorial review is more arduous than the mechanism of review it replaced. Evidence pertaining to general guidelines are similarly relevant to Petitioner's case as they may be evidence of how the Governor reviewed Petitioner's case. Thus, the Court overrules the Governor's relevance objection.

### 3. Unduly Burdensome

The Court overrules the Governor's objection as the Governor has failed to provide any contentions or evidence in support of this claim. *See, e.g., Burton*, 148 F.R.D. at 233 (objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence).

### 4. Deliberative Process Privilege

The key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. *Carter*, 307 F.3d at 1090; *Assembly of Cal.*, 968 F.2d at 920 (stating, "[a] predecisional document is a part of the deliberative process, if the disclosure of the materials would expose an agency's decisionmaking process in such a way

However, the Court finds that the primary clause of Document Request No. 2 is overbroad to the extent it requests documents concerning specific deliberations in cases other than Petitioner's. Accordingly, the Governor need only provide documents which set forth *general* guidance provided to any individuals involved in gubernatorial review, not documents that were intended solely for use in reviewing a particular prisoner's parole suitability, other than Petitioner's.

### 2. Relevance

As the requested documents may shed light on the policies that guide the gubernatorial review, the evidence meets the standard of relevance required for discovery of documents. The Court finds that the request may lead to the discovery of evidence relevant to determining if the gubernatorial review is more arduous than the mechanism of review it replaced. Evidence pertaining to general guidelines are similarly relevant to Petitioner's case as they may be evidence of how the Governor reviewed Petitioner's case. Thus, the Court overrules the Governor's relevance objection.

### 3. Unduly Burdensome

The Court overrules the Governor's objection as the Governor has failed to provide any contentions or evidence in support of this claim. *See, e.g., Burton*, 148 F.R.D. at 233 (objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence).

### 4. Deliberative Process Privilege

The key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. *Carter*, 307 F.3d at 1090; *Assembly of Cal.*, 968 F.2d at 920 (stating, "[a] predecisional document is a part of the deliberative process, if the disclosure of the materials would expose an agency's decisionmaking process in such a way

However, the Court finds that the primary clause of Document Request No. 2 is overbroad to the extent it requests documents concerning specific deliberations in cases other than Petitioner's. Accordingly, the Governor need only provide documents which set forth *general* guidance provided to any individuals involved in gubernatorial review, not documents that were intended solely for use in reviewing a particular prisoner's parole suitability, other than Petitioner's.

### 2. Relevance

As the requested documents may shed light on the policies that guide the gubernatorial review, the evidence meets the standard of relevance required for discovery of documents. The Court finds that the request may lead to the discovery of evidence relevant to determining if the gubernatorial review is more arduous than the mechanism of review it replaced. Evidence pertaining to general guidelines are similarly relevant to Petitioner's case as they may be evidence of how the Governor reviewed Petitioner's case. Thus, the Court overrules the Governor's relevance objection.

### 3. Unduly Burdensome

The Court overrules the Governor's objection as the Governor has failed to provide any contentions or evidence in support of this claim. *See, e.g., Burton*, 148 F.R.D. at 233 (objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence).

### 4. Deliberative Process Privilege

The key inquiry in determining whether particular information is "deliberative" is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. *Carter*, 307 F.3d at 1090; *Assembly of Cal.*, 968 F.2d at 920 (stating, "[a] predecisional document is a part of the deliberative process, if the disclosure of the materials would expose an agency's decisionmaking process in such a way

as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions").

Here, Respondent has identified the following documents as responsive– Document No. 8 on the privilege log, consisting of a "memorandum advising the Governor's Office about how to implement the Governor's parole review authority, and addressing two inmate's parole case factors;" Document No. 9, which is a "memorandum discussing legal options regarding parole denials by the Board of Parole Hearings in parole suitability cases;" and Document No. 10, a "memorandum on draft talking points regarding the Governor's parole review authority." (Joint Statement at 70; Supplemental Privilege Log at 2-3). Respondent's summary description of Document Nos. 8 and 9 on the privilege log indicate that they are pre-decisional. Similarly, by its very nature the documents would seem to be deliberative and would expose the gubernatorial decision making process. However, the Court finds that Respondent has not fulfilled its burden of showing that Document No. 10 on the privilege log is protected by the deliberative process privilege.[14] The phrase "talking points regarding the Governor's parole review authority" does not indicate whether the document is pre decisional nor whether it implicate a part of the decision making process that was not meant to be disclosed to the public.

A finding that deliberative process privilege applies to documents does not end the Court's inquiry as the deliberative process privilege is a qualified privilege rather than an absolute privilege. *Warner Commc'ns., Inc*., 742 F.2d at 1161.

### a. Relevance

As noted previously, the requested documents are probative to the main issue in this instant action–whether the governor's review of parole decisions is more onerous than the previous mechanism for reviewing parole decisions by the Board. Consequently, the

---

[14] The Court reserves final judgement on whether deliberative process applies to Document Nos. 8 through 10 pending in camera review.

documents requested are highly relevant and this factor weighs in favor of disclosure.

The Governor argues that documents produced prior to 2004 are not relevant to Petitioner's case. (Joint Statement at 75). The Governor's argument lacks merit. How a previous Governor exercised his authority may lead to the discovery of relevant evidence.

### b. Availability of other evidence

The availability of other evidence "is perhaps the most important factor in determining whether the deliberative process privilege should be overcome." *North Pacifica*, 274 F.Supp.2d at 1124. The Governor claims that "there is extensive evidence already available to Petitioner regarding the Governor's implementation of the constitutional provision." (Joint Statement at 75). The Governor points specifically to the Legislative Reports, arguing that this request is not necessary as those reports contain all the parole decision made by the Governor and his predecessors. However, the parole decisions made by the Governor are distinct from the guidelines used by the Governor's office to review those decisions. It is likely that the guidelines contain information that is not available in the Legislative Reports and is only available in these documents. Additionally, the Governor generally asserts that the information requested is available in the answers to the interrogatories provided by the Governor but did not identify which answers or which interrogatories contain this information. (Joint Statement at 75). As the Court does not have access to the interrogatories' answers, the Court cannot substantiate this claim.

### c. Government role in litigation

As Secretary Cate is the Respondent in this case and the case centers around the Governor's review of parole decisions, the government's role in this litigation weighs in favor of disclosure. *See California State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775, *6 (N.D. Cal. 2008) (citing *Newport Pacific, Inc. v. County of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) in finding government role as defendant in litigation concerning whether government violated federal and state law militates towards disclosure).

///

### d. Extent disclosure would hinder frank discourse

This factor alone weighs against disclosing the requested documents. Respondent and the Governor argues that disclosure of these documents would "impair the ability of the Governor's staff to offer frank and independent opinions." (Joint Statement at 76). Petitioner argues that the Governor's generalization assertion of harm is not sufficient. Moreover, Petitioner argues that this concern is lessened should the Court order disclosure under a protective order.[15]

Without having reviewed the documents in dispute, the Court is inclined to conclude that Petitioner has demonstrated sufficient need to justify overriding the privilege in this case as the balance of the factors weighs disproportionately in favor of disclosure. This is especially true as the deliberative process privilege should be narrowly construed because confidentiality may impede full and fair discovery of the truth. *See Eureka Fin. Corp. v. Hartford Accident and Indem. Co.*, 136 F.R.D. 179, 183 (E.D.Cal. 1991) (*citing Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)); *see also North Pacifica*, 274 F.Supp.2d at 1122 (deliberative process privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles"). However, the Court reserves final judgement on this issue in order to conduct an *in camera* review of the documents to determine the extent of harm that the Governor's office may suffer from disclosure.

### 5. Mental Process Privilege

The Governor also claims that the documents are protected by the mental processes privilege, which "involves uncommunicated motivations for a policy or decision." *See North*

---

[15] The Court notes that Petitioner's citation to *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854 (D.C.Cir.1980) is not persuasive as the finding from *Coastal* concerned whether the deliberative process applied. The *Coastal* court found that not labeling a decision as final did not shield such decision under deliberative process where the decision is a binding agency opinion. *See Newport Pacific*, 200 F.R.D. at 637, fn. 5.

*Pacifica*, 274 F.Supp.2d at 1122.  By their very nature, guidelines communicated to the Governor's office, the documents requested here are not uncommunicated motivations and therefore do not fall within this privilege's protections.  Additionally, the Court notes that none of the documents were authored by the Governor.

### 6. Attorney Client Privilege

Federal common law recognizes the attorney client privilege.  *North Pacifica*, 274 F.Supp.2d at 1126.  However, "'[t]here is little case law addressing the application of the attorney-client privilege' in the government context."  *In re County of Erie*, 473 F.3d 413, 417 (2d Cir. 2007) (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 530 (2d Cir. 2005).  Some courts have held that attorney client privilege similarly applies in the government context as it would in the private context.  *See In re Grand Jury Investigation*, 399 F.3d at 533 (noting that "[t]here is, then, substantial authority for the view that the rationale supporting the attorney-client privilege applicable to private entities has general relevance to governmental entities as well," and that the current case law "generally assumes the existence of a governmental attorney-client privilege in civil suits between government agencies and private litigants"); *see also In re County of Erie*, 473 F.3d at 419 (stating "[a]t least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on par with the claim of an individual corporate entity"); *Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005) (reviewing sister circuit precedent confirming a government entity can assert attorney client privilege in the civil context but noting split among circuit over whether privilege applies in grand jury context); *but see In re: A Witness Before the Special Grand Jury*, 288 F.3d 289, 291-292, (7th Cir. 2002) (acknowledging government attorney client privilege in civil context, noting that in private context attorney client privilege operates similarly in civil and criminal cases, but finding no attorney client privilege existed between state officer holder and state government lawyer in criminal context).

The Court agrees with the many courts that have held that a government entity may invoke attorney-client privilege in the civil context. *See, e.g.*, *U.S. v. Ferrell* 2007 WL 2220213 *2 (W.D. Wash. 2007) (citing *Coastal States Gas Corp.*, 617 F.2d at 863 in stating that, "[t]he attorney-client privilege protects entities, such as corporations and government agencies, as well as individuals"); *see also Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 336 (N.D.N.Y. 2006); *MacNamara v. City of New York*, 2007 WL 755401 *7 (S.D.N.Y. 2007). The Governor claims that three documents (Documents No. 8 through 10 on the privilege log) are protected by attorney client privilege. The party asserting the privilege bears the burden of establishing the following elements:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citing 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961) and *United States v. Plache*, 913 F.2d 1375, 1379 n. 1 (9th Cir. 1990)); *see also Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

The declaration of the Governor's Legal Affairs Secretary avers that the disputed documents were prepared by a legal adviser in their capacity as such regarding legal advice and that the documents were confidentially maintained. (Hoch Decl. at 4-5). Petitioner contends that such a description fails to meet the criteria as there is no claim that the documents "contain, reveal, or be premised upon confidential client communications." (Joint Statement at 79) (citing *Coastal States*, 617 F.2d at 863). In *Coastal States*, the court found that the memoranda prepared by a government attorney "[r]ather than 'counseling,' intended to assist the agency in protecting its interests, the memoranda here seem to be neutral, objective analysis of agency regulations...resembl[ing] question and answer guidelines which might be found in an agency manual." However, it is a very fine distinction between "neutral, objective analysis of agency regulations" as discussed in *Coastal States* and the type of recommendations the Second Circuit discussed in *County of*

*Erie*.  The Second Circuit noted that:

> When a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation-or that advocates and promotes compliance, or oversees implementation of compliance measures-is legal advice. Public officials who craft policies that may directly implicate the legal rights or responsibilities of the public should be encouraged to seek out and receive fully informed legal advice in the course of formulating such policies.... This observation has added force when the legal advice is sought by officials responsible for law enforcement and corrections policies.

*In re County of Erie*. 473 F.3d at 422 (citation marks ommitted).  The Court finds that it cannot rule on whether attorney client privilege applies to the three documents identified herein without conducting an *in camera* review to determine which category these documents fall into.

### B. Secretary Cate's Objections

Respondent objects that the documents are not in Respondent's custody, possession, or control.  In light of the Governor's invocation of privileges, the Court is satisfied that the documents are not available to Respondent and therefore the objection is sustained.

### Document Request No. 3

> All documents, including but not limited to executive summaries, memorandum decisions, written directives, instructions, memoranda, e-mails, computer (including word processing) records, faxes, notes, correspondence, meeting minutes, messages, logs or other records of telephone or other conversations, and communications, whether originating from the Governor's Office, the Board, or any other source, relating to the Governor's Indeterminate Sentence Parole Release Reviews of the Board's decisions finding Petitioner suitable for parole in a) 1990; b) 2003; c) 2004; and d) 2008.

### A. Compound, Incomprehensible, Vague, Overbroad, Irrelevant and Unduly Burdensome

The Governor objects on the grounds that the request is compound, incomprehensible, vague, ambiguous, overbroad, irrelevant and unduly burdensome.  With respect to these objections, the Court finds the Governor's blanket objections on these

grounds insufficient. *See McLeod, Alexander, Powel & Apffel, P .C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome, oppressive, and irrelevant are insufficient to meet the objecting party's burden of explaining why discovery requests are objectionable). The Governor has not articulated a persuasive reason or provided evidence upon which the Court may sustain these objections.

The Governor further objects on the grounds that the documents requested are protected by attorney client privilege, deliberative process privilege, and that they are protected from discovery as the Governor was functioning in a quasi judicial capacity.

**B. Attorney Client Privilege**

The Governor has identified four documents which are responsive to this document request–(1) an internal "legal memorandum containing a summary and recommendation regarding [Petitoner]'s case factor" authored by the Governor's Deputy Legal Affairs Secretary to the Governor's Legal Affairs Secretary; (2) an internal "legal memorandum concerning parole cases for the Governor's review, including [Petitioner]" authored by the Governor's Legal Affairs Secretary to the Governor; (3) an internal "legal memorandum containing a summary and recommendation regarding [Petitoner]'s case factor" authored by the Governor's Deputy Legal Affairs Secretary to the Governor's Chief Deputy Legal Affairs Secretary; and (4) an internal "briefing memorandum concerning parole cases for the Governor's review, including Thomas " authored by the Governor's Deputy Legal Affairs Secretary to the Governor's Legal Affairs Secretary. (Suppl. Privilege Log at 1; Joint Statement at 83). From the descriptions provided, the Court is inclined to find that Documents No. 1 through 3 fall within the attorney client privilege as they are communications between a professional legal adviser in her/his capacity and the Governor regarding legal advice sought in confidence. *See. Martin*, 278 F.3d at 999. The Court notes, however, that the description of Document No. 4 does not contain any mention of either legal advice or of confidential information; rather the document is described as, "an

internal confidential briefing memorandum prepared by the Governor's legal staff for the Governor, informing him of the parole cases that the Chief Deputy Legal Affairs Secretary will discuss with him. " (Hoch Dec. at 4). Consequently, the Court is inclined to find that this document is not protected by the attorney client privilege. The Court reserves judgement pending *in camera* review of these documents.

### C. Deliberative Process Privilege

The Governor invokes the deliberative process privilege to Documents Nos. 1 through 4. The Court finds, based on the Governor's assertions, that the four documents are predecisional and that they are deliberative. Thus, the Court finds that the deliberative process privilege applies to the documents.

For the reasons stated in section above, the government's role in the litigation, the interests of the litigant and society in accurate judicial findings, the seriousness of the litigation and of the issues and the federal interest in enforcement of federal law all weigh in favor of disclosure. While the Governor claims that the document request are irrelevant, the Governor fails to support this claim in any substantial manner. As the documents requested pertain directly to the Governor's reversal of the Board's grant of parole in Petitioner's case, the Court finds the documents very relevant to whether Petitioner's constitutional rights were violated.

The Governor further argues that the Petitioner does not have a compelling need for the documents as there is other available evidence–specifically, Petitioner was provided with a detailed statement of reasons for the Governor's decisions after each of the Governor's decision reversing the Board's grant and with statistics and examples of how the Governor has implemented his authority to review parole decisions. (Joint Statement at 85-86). However, the Governor's argument presumes that the information contained in the document requests is the same kind of information that can be gleaned from the decisions and statistics. This is not necessarily true as the information contained in this document

request would shed more light on how Governor exercisers his discretion.  The Court

reserves judgement on whether or not Petitioner is entitled to the documents and will

conduct an *in camera* review.

### D. Mental Process Privilege

The Governor argues that the documents requested are protected by "the quasi-

judicial process privilege."  (Joint Statement at 87).  As noted by Petitioner, and as revealed

by the Court's review of the existing caselaw, there is no distinct "quasi-judicial process

privilege."  Rather, it appears that Respondent employs the term quasi-judicial privilege

synonymously with term mental process privilege.

Documents No. 1 through 4 do not appear to be subject to the mental process

privilege as those documents are not "uncommunicated motivations for a policy or

decision." *North Pacifica*, 274 F.Supp.2d at 1122.  The documents requested here are

memoranda prepared by legal staff in the Governor's office to the Governor; thus they do

not qualify as uncommunicated motivations and therefore do not fall within this privilege's

protections.  Additionally, as stated previously, the author of the documents is not the

Governor and thus the applicability of the mental process privilege is questionable at best.

Consequently, the Court overrules the Governor's objections on this ground.  Further,

assuming arguendo that the mental process privilege does apply, the Court finds that the

balance of interests favors disclosure and will therefore conduct an *in camera* review.

### Document Request No. 4

> All documents containing policy statements of the Governor
> regarding the manner in which he exercises his review authority under
> California Constitution article V, section 8(b), and California Penal Code
> section 3041.2.

The Governor objects on the grounds that the request is overly vague, ambiguous,

and overly broad.  Specifically, the Governor contends that the phrase "policy statements" is

vague and ambiguous.   Notwithstanding his objections, the Governor does identify three

documents (Documents Nos. 8-10) as responsive to this document request.  The Governor

asserts that the documents are protected by the attorney client and deliberative

process/mental process privilege.  The Court has discussed *supra* both privileges as they

pertain to these exact documents.   The Court incorporates its previous discussion here.

**IV.  Deposition Requests**

**Governor Schwarzenegger**

High-ranking government officials are not normally subject to depositions.  *See, e.g.,*

*Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979).  As the First Circuit

Court of Appeal explained:

> [T]op executive department officials should not, absent extraordinary
> circumstances, be called to testify or deposed regarding their reasons for
> taking official action. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d
> 575, 586 (D.C. Cir. 1985); *see also In re United States (Holder)*, 197 F.3d
> 310, 313 (8th Cir. 1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In
> re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993). This rule is
> based on the notion that "[h]igh ranking government officials have greater
> duties and time constraints than other witnesses" and that, without
> appropriate limitations, such officials will spend an inordinate amount of
> time tending to pending litigation.  *Kessler*, 985 F.2d at 512.
>
> But this limitation is not absolute. Depositions of high ranking officials may
> be permitted where the official has first-hand knowledge related to the claim
> being litigated. *See Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D.
> Ala. 1991); *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12 (D.
> Mass. 1990); *Cmty. Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96
> F.R.D. 619, 621 (D.D.C. 1983). However, even in such cases, discovery is
> permitted only where it is shown that other persons cannot provide the
> necessary information. *Holder*, 197 F.3d at 314.

*Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

As a threshold matter, an official objecting to a deposition must first establish that

she is sufficiently "high-ranking" to invoke the deposition privilege; once the Court

determines that an official is entitled to invoke the privilege, the burden shifts to the party

seeking to depose the high-ranking official.  *See United States v. Sensient Colors, Inc.*, 649

F.Supp.2d 309, 320 (D. N.J. 2009).  A party seeking the deposition of a high-ranking

government official must show: (1) the official's testimony is necessary to obtain relevant

information that is not available from another source; (2) the official has first-hand

information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources. *Id.* (citing *Buono v. City of Newark*, 249 F.R.D. 469, 471 n.2 (D.N.J. 2008)). There can be no doubt that Governor Schwarzenegger is a high-ranking government official for the purposes of the deposition privilege. Accordingly, the Court must determine whether Petitioner has demonstrated extraordinary circumstances which entitled him to depose the Governor.

Although the Governor certainly has personal knowledge of information relevant to Petitioner's claim, its is highly likely that any information the Governor can provide is also available from other sources. According to the Governor's Legal Affairs Secretary, the Governor's legal staff are engaged in the process whereby the a prisoner's "record is reviewed, legal analysis and advice is provided, and a decision is made." (Hoch Dec. at 2). Because parole decisions entail a "collaborative effort" between the Governor and his legal staff, most, if not all, of the information Petitioner would be able to obtain from the Governor's deposition may also be obtained from members of the Governor's legal staff. As Petitioner has failed to carry his burden of establishing that the information he seeks to obtain from the Governor's deposition is not available from other sources, Petitioner has not established extraordinary circumstances. *See Sweeney v. Bond*, 669 F.2d 542, 547 (8th Cir. 1982) (stating that because plaintiffs could depose director of revenue, who likely possessed same information the Governor could provide, plaintiffs failed to establish specific need for Governor's deposition); *Coleman v. Schwarzenegger*, 2008 U.S. Dist. LEXIS 70224*27-28 (E.D. Cal. 2008) (denying deposition request because it was "likely that other lower-ranking members of [Governor's] office or administration would have relevant information about his actions").

Even assuming that the Governor does have relevant information not available from

other sources, Petitioner is not entitled to take the Governor's deposition because such information may be obtained through a less burdensome means– interrogatories. *See Kleppe*, 600 F.2d at 231 (countenancing district court's order directing official to answer interrogatories in lieu of a deposition). In the event Petitioner has a specific need for information solely in the Governor's possession, Petitioner may submit a limited number of additional interrogatory requests to the Court for approval.

**Former Governor Davis**

The general rule prohibiting depositions of high-ranking government officials applies to former high-ranking officials, although in the case of former high-ranking government officials, one important rationale for the rule is absent. *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d at 320 (noting that rationale based on interference with official duties is absent). For the same reasons applicable to Petitioner's request to depose Governor Schwarzenegger, Petitioner has failed to establish extraordinary circumstances sufficient to warrant the deposition of former Governor Gray Davis. In the event Petitioner has a specific need for information solely in the possession of former Governor Davis, Petitioner may submit a limited number of interrogatory requests to the Court for approval. *See Kleppe*, 600 F.2d at 231.

**Martin Hoshino**

Respondent objects to Petitioner's request to depose Martin Hoshino, the Executive Officer of California's Board of Parol Hearings, on the basis that Mr. Hoshino is a high-ranking government official subject to limited immunity from depositions. (Joint Statement at 117). Respondent also contends that Mr. Hoshino "does not have relevant information pertaining to how the Governor exercises his authority purusant to article V, section 8(b)." (Joint Statement at 118). Respondent's relevancy objection lacks merit. *See, e.g., La Chemise Lacoste*, 60 F.R.D. at 170-71 (discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible

bearing upon the subject matter of the action).

Respondent has failed to establish that Mr. Hoshino is a "high-ranking" government official within the meaning of Respondent's privilege claim. The Court takes judicial notice of the CDCR's Executive Staff Outline, which demonstrates that Mr. Hoshino's office is subordinate to the Undersecretary of Operations.[16] The Court also notes that the CDRC's Organization Chart, which does not list Mr. Hoshino's office, suggests that the Undersecretary of Operations Reports to the Chief of Staff, who in turn reports to Secretary Cate.[17] None of the authorities cited by Respondent in support of its objection extends the deposition privilege as far down the chain of command as Respondent urges. Accordingly, Petitioner's request for leave to depose Martin Hoshino is granted.

**Remaining Requests**

Petitioner's request for leave to depose the individuals identified in response to Interrogatory No. 21 is granted. The Court reserves judgment on Petitioner's request for leave to depose the individuals identified in response to Interrogatory No. 1 and Interrogatory No.14. The Governor shall identify the individuals described in Interrogatory No. 1 and Interrogatory No. 14, and in the event the Governor, or Respondent, objects to their depositions, such objections shall be submitted to the Court within fifteen days of the date of this order.

## Order

Based on the foregoing, it is HEREBY ORDERED that:

1)      The Clerk of Court is DIRECTED to substitute Matthew Cate as Respondent in this matter

2)      Petitioner's motion to compel is GRANTED in part and DENIED in part, as

---

[16]  http://www.cdcr.ca.gov/About_CDCR/Executive_Staff.html

[17]  http://www.cdcr.ca.gov/About_CDCR/docs/CDCR_OrgChart_9_16_09.pdf

follows:

A.  Interrogatories

   i.   The Court overrules the Governor's objections to
        Interrogatory Nos. 4, 8(a), 9(a), 10, 12, 15, and 18.  The Court
        overrules the Governor's objections to Interrogatory No. 1.
        Petitioner's motion to compel is GRANTED with respect to
        those interrogatories.

   ii.  The Governor shall submit a response to Interrogatory Nos. 11
        and 13 for the Court to review *in camera*.  After conducting an
        *in camera* review of these documents, the Court shall rule on
        the Governor's assertion of privilege for Interrogatory Nos. 11
        and 13.

   iii. The Court finds the Governor's response to Interrogatory No.
        17 sufficient.  Petitioner's motion to compel is DENIED with
        respect to this interrogatory.

   iv.  The Court sustains the Governor's objections to Interrogatory
        No. 20.  Petitioner's motion to compel is DENIED with
        respect to this interrogatory.

   v.   The Court sustains Respondent's objections to Interrogatory
        Nos., 1, 11-14 and 16-18 on the basis that the information
        sought is not available to Respondent.  Petitioner's motion to
        compel Respondent to respond to these interrogatories is
        DENIED.

B.  Document Requests–the Governor is to produce those documents
    responsive to Document Request Nos. 2, 3, and 4, for the Court to

review *in camera*.  After conducting an *in camera* review of these documents, the Court shall rule on the Governor's assertion of privilege.

C.     Deposition Requests

i.     The Court sustains the Governor and Respondent's objections to the deposition request for Governor Schwarzenegger and former Governor Gray Davis.

ii.    The Court overrules the Governor and Respondent's objections to the deposition request for Martin Hoshino and the individuals identified in response to Interrogatory No. 21

iii.   The Court reserves judgment on Petitioner's request for leave to depose the individuals identified in response to Interrogatory Nos. 1 and 14.  The Governor shall identify the individuals described in Interrogatory No. 1 and 14. In the event the Governor, or Respondent, objects to their depositions, such objections shall be submitted to the Court within fifteen days of the date of this order.

IT IS SO ORDERED.

**Dated:   February 19, 2010          /s/ John M. Dixon**
                    UNITED STATES MAGISTRATE JUDGE