# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>MATTHEW CATE,<br><br>　　　　　Respondent. | 1:05-cv-01198-LJO-JMD-HC<br><br>ORDER GRANTING IN PART AND DENYING IN PART OBJECTIONS TO PETITIONER'S DEPOSITION REQUESTS |

**Procedural Background**

Petitioner Brian Thomas ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On March 19, 2009, the Court scheduled an evidentiary hearing in this matter in order to permit Petitioner to present evidence that article V, section 8(b) of the California Constitution created a significant risk of prolonging Petitioner's incarceration and therefore violated Petitioner's rights under the Ex Post Facto Clause of the United States Constitution. (Doc. 27). The Court granted Petitioner's request for leave to propound discovery on July 21, 2009. (Doc. 38). Currently before the Court are the Governor's objections to Petitioner's request to depose various members of the Governor's staff. (Doc. 70).

**Discussion**

Petitioner seeks to depose the individuals identified by the Governor in response to Interrogatory No. 1, which provides:

> When Governor Schwarzenegger issued his Indeterminate Sentence Parole Release Review, dated November 15, 2004, reversing the Board's grant of parole to Thomas, did he personally review materials provided him by the Board pursuant to California Penal Code 3041.2(a) and author a review?
> a. If not, please identify the person or persons who reviewed those materials and authored the Review, providing his, her, or their name(s) business address(es) business telephone number(s), and title(s).
> b. If so, please state:
> i. The date(s) of the review of the materials and the drafting of the Indeterminate Sentence Parole Release Review;
> ii. The amount of time spent in such review and drafting; and
> iii. The documents or other input reviewed

Each of the individuals identified by the Governor in response to Interrogatory No. 1 are attorneys. The Governor objects to the depositions of the persons identified in response to Interrogatory No. 1 on the basis of the attorney-client privilege. The Governor also objects to the proposed deposition of Peter Siggins on the grounds that Mr. Siggins is a high-ranking government official entitled to limited immunity from depositions.

**I.  Deposition of Mr. Siggin's**

High-ranking government officials are not normally subject to depositions. *See, e.g., Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). An official objecting to a deposition must first establish that she is sufficiently "high-ranking" to invoke the deposition privilege; once the Court determines that an official is entitled to invoke the privilege, the burden shifts to the party seeking to depose the high-ranking official. *See United States v. Sensient Colors, Inc.*, 649 F.Supp.2d 309, 320 (D. N.J. 2009). A party seeking the deposition of a high-ranking government official must show: (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources. *Id.* (citing *Buono v. City of Newark*, 249 F.R.D. 469, 471 n.2 (D.N.J. 2008)).

The Court finds that the office of Legal Affairs Secretary to the California Governor is sufficiently high-ranking to implicate the deposition privilege. Andrea Lynn Hoch, the Governor's current Legal Affairs Secretary, declares under oath that the Legal Affairs Secretary is the

1  Governor's chief legal adviser.  (Joint Statement, Attachment 4).  High level cabinet members such
2  as the Governor's top legal advisor are entitled to invoke the limited deposition privilege.  *See*
3  *Coleman v. Schwarzenegger*, 2008 U.S. Dist. LEXIS 70224*22-23 (E.D. Cal. 2008) (extending
4  privilege to Governor's Chief of Staff); *see also Low v. Whitman*, 207 F.R.D. 9, 11-12 (D.D.C. 2002)
5  (noting that although Deputy Chief of Staff was not a cabinet member, he was "in a position of
6  substantial authority," and was "not far from the Chief of Staff in terms of seniority" in concluding
7  that he was entitled to invoke the deposition privilege).

8      Petitioner has not demonstrated that the information he seeks from Mr. Siggins is not
9  available from other sources.  Accordingly, the Court sustains the Governor's objection to the
10  deposition of Mr. Siggins at this time.  *See Sensient Colors*, 649 F.Supp.2d at 320.  In the event that
11  further discovery reveals that Mr. Siggins does have information not available from other sources,
12  Petitioner may renew his request to depose Mr. Siggins.  Petitioner may also submit a limited
13  number of interrogatories directed at Mr. Siggins to the Court for approval.

14  **II.    Attorney-Client Privilege**

15      The attorney-client privilege protects confidential disclosures made by a client to an attorney
16  in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.  *E.g.*
17  *United States v. Ruehle*, 583 F.3d 600, 606 (9th Cir. 2009).  Although there is little case law
18  addressing the application of the attorney-client privilege in the government context, *In re County of*
19  *Erie*, 473 F.3d 413, 417 (2d Cir. 2007) (quoting *In re Grand Jury Investigation*, 399 F.3d 527, 530
20  (2d Cir. 2005)), it appears settled that a government entity may invoke attorney-client privilege in the
21  civil context, *see U.S. v. Ferrell* 2007 WL 2220213 *2 (W.D. Wash. 2007) (citing *Coastal States*
22  *Gas Corp.*, 617 F.2d at 863 for the proposition that "[t]he attorney-client privilege protects entities,
23  such as corporations and government agencies, as well as individuals"); *see also Trudeau v. New*
24  *York State Consumer Protection Bd.*, 237 F.R.D. 325, 336 (N.D.N.Y. 2006); *MacNamara v. City of*
25  *New York*, 2007 WL 755401 *7 (S.D.N.Y. 2007).  As a threshold matter, the Court must determine
26  whether the Governor has carried his burden of establishing that an attorney-client relationship exists
27  between the Governor's office and the attorneys identified in response to Interrogatory No. 1 with
28  respect to the attorneys' involvement in the Governor's parole review practices.

The fact that a person is a lawyer does not establish that an attorney-client relationship exists between that person and her employer. *See, e.g., United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Where a client hires an attorney to carry out tasks unrelated to the provision of legal services, the attorney-client privilege is inapplicable. *See, e.g., United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). On the other hand, "where a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *Id*. "The presumption is rebutted when the facts show that the lawyer was 'employed without reference to his knowledge and discretion in the law.'" *Id*. As it is clear that the Governor's legal staff are employed "with...reference to [their] knowledge and discretion in the law," *id.* at 1502, the Court finds that an attorney-client relationship exists between the Governor and the members of his legal staff. Accordingly, the Court must determine whether Petitioner has made a showing sufficient to entitle him to depose members of the Governor's legal staff despite the existence of an attorney-client relationship between the legal staff and the Governor's office.

The Governor urges the Court to employ the framework set forth in *Shelton v. American Motors Corp*., 805 F.2d 1323, 1327 (8th Cir. 1987), pursuant to which a party may take the deposition of opposing counsel only if he can show that: (1) no other means exists to obtain the information; (2) the information is relevant and non privileged; and (3) the information is crucial to the preparation of the case. (Objections at 3). The *Shelton* framework was crafted in the context of a litigant's attempt to depose *opposing counsel* during pending litigation. *Id*. Here, however, Petitioner does not seek to depose the attorney's responsible for litigating the instant matter. Further, Petitioner avers that, to the extent any of the individuals identified in response to Interrogatory No. 1 have assisted in the instant litigation, he does not seek to depose them regarding such assistance. (Response at 3).

The Court finds that the *Shelton* test does not provide the appropriate framework for determining whether to permit Petitioner to depose members of the Governor's legal staff given the context of this action. *Accord Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of*

1   *Delaware v. Friedman*, 350 F.3d 65, 70-71 (2nd Cir. 2003) (distinguishing *Shelton*)[1]; *Younger Mfg.*
2   *Co. v. Kaenon, Inc.*, 247 F.R.D. 586, 588 (C.D. Cal. 2007) (declining to follow *Shelton* because
3   attorney was percipient fact witness); *Hines v. Cal. PUC*, 2009 U.S. Dist. LEXIS 107838*4 (N.D.
4   Cal. 2009) (same). Instead, the Court adopts the totality of the circumstances approach set described
5   by the Second Circuit in *Friedman*, which

> requires the Court to take into consideration various factors, including the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. . . . Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

10  *Younger*, 247 F.R.D. at 588 (citing *Friedman*, 350 F.3d at 72).
11          The balance of factors weighs in favor of permitting Petitioner to take limited depositions of
12  at least some members of the Governor's legal staff. Deposing members of the Governor's legal
13  staff is necessary to determine whether the Governor complied with his statutory commands in
14  reversing Petitioner's parole grant. (Doc 67 at 13). This is especially so given the crucial role
15  members of the Governor's legal staff play in effecting parole reviews under article V, section 8(b).
16  The discovery Petitioner has already conducted, while considerable, is insufficient to provide
17  answers to several important questions, including the inquiry posed by Interrogatory No. 1.
18  Although deposing members of the Governor's legal staff presents a substantial risk of encountering
19  privilege issues, the risk of actually exposing any privileged matter is de minimis in light of the
20  guidance this order will provide concerning the scope of the depositions as well as fact that the
21  deponents can, and no doubt will, invoke the attorney-client privilege with respect to improper

---

[1] In *Friedman*, the Second Circuit Court of Appeals noted that even Eighth Circuit case law distinguishes instances in which a party seeks to depose litigation counsel– thereby presenting the risk of providing "a back-door method for attorneys to glean privileged information about an opponent's litigation strategy"– from instances in which the subject matter of the deposition is relevant information about *prior* terminated litigation. *Id*. *A fortiori*, where a deposition does not even seek information about prior litigation, the primary interest underlying the *Shelton* test is not implicated. *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) ("*Shelton* test was intend to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy").

U.S. District Court
E. D. California

5

1  questions.² Accordingly, Petitioner may depose two of the individuals identified in Interrogatory No.
2  1, excluding Mr. Siggins.  With respect to the remaining individuals identified in Interrogatory No. 1,
3  Petitioner may submit a reasonable number of interrogatories to the Court for approval.

**III.     Request for Protective Order**

The Governor asks the Court to issue a protective order limiting the scope of the depositions of the Governor's legal staff to the information sought in Interrogatory No. 1.   The Governor has failed to carry his burden of establishing the propriety of a protective order.   Further, rather than guessing what the line of questioning or the objections to that line will be, the Court prefers to allow at least one deposition to go forward in order to create a record of what inquiries, objections and assertions of privilege arise in order to furnish a context for the disputes when a party makes a motion to resolve the dispute. *Accord Pritchard v. County of Erie*, 2006 U.S. Dist. LEXIS 74356 *11 (W.D.N.Y. 2006).

Although the Court declines to issue a protective order at this time, Petitioner is cautioned that questions regarding the specific deliberations and mental impressions of the Governor's legal staff with respect to a particular case are likely objectionable on the basis of the attorney-client privilege. *See Rein v. United States PTO*, 553 F.3d 353, 371 n.26 (4th Cir. 2009) (citation omitted) ("the attorney-client privilege permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts").  On the other hand, questions regarding the logistics of the Governor's parol review, as well as questions concerning general policy and practices of the Governor's legal staff, are likely permissible. *See Pritchard v. County of Erie*, 546 F.3d 222, 225 (2nd Cir. 2008) (distinguishing attorney's discussions of general policy and political advice from privileged communications).  The Governor and Respondent are cautioned that, to the extent the attorney-client privilege prevents members of the Governor's legal staff from providing meaningful discovery regarding the manner in which the Governor exercises his parole review authority, the Court may revisit its finding that "most, if not all, of the information Petitioner would be able to

---

² Although the risk of actually exposing privileged information is always slight given a deponent's ability to invoke the attorney-client privilege during a deposition, *Friedman*'s reference to the risk of encountering privilege issues is not superfluous.  In the Court's view, the risk alluded to in *Friedman* is the risk of devoting judicial time and resources to litigating difficult privilege issues; in the context of the instant action, that ship sailed long ago.

1 obtain from the Governor's deposition may also be obtained from members of the Governor's legal
2 staff." (Doc. 67 at 50).

### Order

For the reasons state above, IT IS HEREBY ORDERED that:

1) The Governor's request for an order limiting Petitioner to taking the depositions of only two of the persons identified in Interrogatory No. 1 is GRANTED.  With respect to the remaining individuals identified in Interrogatory No. 1, Petitioner may submit a reasonable number of interrogatories to the Court for approval.  After deposing two of the individuals identified in Interrogatory No. 1, Petitioner may request leave of Court to take additional depositions.

2) The Governor's request for a protective order is DENIED.

3) The Governor's objection to the deposition of Peter Siggins is SUSTAINED. Petitioner is not authorized to take Mr. Siggins deposition at this time.  In the event that further discovery reveals that Mr. Siggins possesses information not available from other sources, Petitioner may renew his request to depose Mr. Siggins. Petitioner may also submit a limited number of interrogatories directed at Mr. Siggins to the Court for approval.

IT IS SO ORDERED.

**Dated:   April 5, 2010**              /s/ John M. Dixon
                                        UNITED STATES MAGISTRATE JUDGE